972 F.2d 342
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Ricky Jennings BRAWLEY, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Lillie Mae BLALOCK, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Preston Eugene BLALOCK, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Jack BLALOCK, SR., Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Herman BLALOCK, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Jack BLALOCK, JR., Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Timothy Wayne BLALOCK, Defendant-Appellant.
 No. 91-5563, 91-5567, 91-5568, 91-5569, 91-5570, 91-5599, 91-5668.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 8, 1992
Decided: July 31, 1992
 
 1
 Langdon Dwight Long, Assistant Federal Public Defender, Columbia, South Carolina, for Appellant Brawley; Thomas G. Nessler, Jr., Greenville, South Carolina, for Appellants Lillie Blalock and Jack Blalock, Sr.; Edward Walter Miller, Greenville, South Carolina, for Appellant Preston Blalock; Daniel Nolan Ballard, Greenville, South Carolina, for Appellant Herman Blalock; Susan P. Ingles, Greenville, South Carolina, for Appellant Jack Blalock, Jr. David Calhoun Stephens, Assistant United States Attorney, Greenville, South Carolina, for Appellee.
 
 
 2
 William B. Long, Jr., Greenville, South Carolina, for Appellant Timothy Blalock. E. Bart Daniel, United States Attorney, Greenville, South Carolina, for Appellee.
 
 
 3
 Before HALL and SPROUSE, Circuit Judges, and KIDD, Senior United States District Judge for the Northern District of West Virginia, sitting by designation.
 
 KIDD, Senior District Judge:
 OPINION
 
 4
 Ricky Jennings Brawley, Lillie M. Blalock, Preston E. Blalock, Jack Blalock, Sr., Herman Blalock, Jack Blalock, Jr., and Timothy Wayne Blalock, appeal their convictions and sentences on various drug charges. Finding no error, we affirm.
 
 I.
 
 5
 Since the late 1970's, Lillie M. Blalock and her son Timothy Blalock headed an organization which sold marijuana out of Mrs. Blalock's house, near the Ottaray community in Union County, South Carolina. Large quantities of marijuana were brought to Mrs. Blalock's for "bagging" into smaller amounts and then sold by local juveniles recruited by the organization. At trial it was described as operating on the scale of a "fast food restaurant" with a constant line of vehicles driving to the house to purchase marijuana. The residence was referred to as "Lillie Mae's" or "Big Mama's" house. Whenever a member of the organization was arrested and incarcerated, which, at various times, happened to all of the appealing defendants except Mrs. Blalock, another person was simply recruited to take his place. There was direct evidence that all of the defendants participated directly in the marijuana end of the organization except Mrs. Blalock's husband, Jack Blalock Sr., who was only implicated by circumstantial evidence. Jack Blalock, Sr. lived at the house the entire time the conspiracy existed, and directed marijuana customers "around back" when asked where everybody was.
 
 
 6
 In June 1984, Timothy Blalock branched out into the cocaine business, taking several of the sellers and transporters of the marijuana business with him, including Ricky Brawley. The cocaine was sold at "Lillie Mae's" in a manner similar to that of the distribution of marijuana. Timothy Blalock possessed a Ruger Mini-14 Assault rifle during a cocaine buy on March 31, 1989. On June 30, 1989, while negotiating another cocaine buy, Timothy Blalock, armed with a firearm, and Ricky Brawley, armed with a semi-automatic pistol, pointed their weapons at an undercover agent and beat the confidential informant accompanying him. The agent and informant then fled, hearing the sound of gunfire, believed to be fired by Timothy Blalock and/or Ricky Brawley.
 
 
 7
 On August 29, 1990, an indictment was returned against the defendants, along with seven other individuals. Count One of the Indictment charged the appealing defendants, as well as six others who entered pleas of guilty, with conspiracy to possess with intent to distribute and to distribute marijuana, from February 17, 1981, in violation of 21 U.S.C. § 846. Count Two charged Timothy Blalock and Ricky Brawley with conspiracy to possess with intent to distribute and to distribute cocaine, from June 1984, in violation of 21 U.S.C. § 846.[1] Counts Three and Four charged Timothy Blalock with using and carrying a firearm during, and in relation to, a drug trafficking crime on March 31, 1989, and June 30, 1989, respectively, in violation of 18 U.S.C. § 924(c). Count Five charged Ricky Brawley with using and carrying a firearm during, and in relation to, a drug trafficking crime on June 30, 1989, in violation of 18 U.S.C. § 924(c).
 
 
 8
 After a three day jury trial, all of the defendants were convicted of the respective charges pending against them. At the sentencing hearings, the government chose to present only one witness for proof of the amount of marijuana and cocaine involved in the marijuana and cocaine conspiracies. Ranier "Bo" Pharr, a transporter for both conspiracies, testified that during the early years of the marijuana conspiracy he personally delivered at least 4300 pounds of marijuana to "Lillie Mae's." He further testified that he personally delivered at least 100 pounds of cocaine to the Blalock residence during the early phase of the cocaine conspiracy.
 
 
 9
 Using the 4300 pounds as the amount of marijuana involved in the marijuana conspiracy Count, Lillie M. Blalock was sentenced to 235 months, Preston Blalock was sentenced to 327 months, Jack Blalock, Sr. was sentenced to 97 months, Herman Blalock was sentenced to 144 months, Jack Blalock, Jr. was sentenced to 210 months, Ricky Brawley was sentenced to 293 months, and Timothy Blalock was sentence to 480 months. Using the 100 pounds as the amount of cocaine involved in the cocaine conspiracy, Ricky Brawley was sentenced to 293 months, concurrent with his sentence in Count One, and Timothy Blalock was sentenced to Life Imprisonment, concurrent with his sentence in Count One. Timothy Blalock also received a 60-month consecutive sentence on Count Three and a 240-month consecutive sentence on Count Four. Ricky Brawley received a 60-month consecutive sentence on Count Five.
 
 II.
 
 10
 Defendants Preston Blalock, Herman Blalock and Jack Blalock, Jr. claim that Count One, the marijuana conspiracy, was misjoined with the remaining counts of the indictment involving the cocaine and firearm charges, and that the trial court erred by refusing to grant their motions to sever. They claim they were unduly prejudiced by the evidence regarding the cocaine conspiracy and firearm violations against Timothy Blalock and Ricky Brawley, and by the district court's failure to give requested limiting trial instructions regarding evidence of the same. As a result, these defendants assert that the jury could not make an individualized finding of guilt as to each of them due to the "spill over" of evidence, since the evidence on the joined cocaine and weapons charges was highly prejudicial and not easily segregated.
 
 
 11
 First, we find that the defendants and offenses charged in the indictment were properly joined under Rule 8, Federal Rules of Criminal Procedure. All of the defendants were active in the marijuana conspiracy. The cocaine conspiracy was a logical offshoot, utilizing virtually the same personnel, facilities, and methods as the marijuana conspiracy. Certainly, there exists sufficient relatedness and identity between the two conspiracies and the actors so as to justify joinder. See United States v. Haney, 914 F.2d 602 (4th Cir. 1990).
 
 
 12
 We next turn to the question of whether there has been a showing of prejudice sufficient to justify severance under Rule 14, Federal Rules of Criminal Procedure. The denial of a motion to sever "is within the trial court's discretion and will not be overturned absent a clear abuse of that discretion. A defendant must show prejudice in order for the court's ruling to constitute an abuse of discretion, and no prejudice exists if the jury could make individual guilt determinations by following the court's cautionary instructions." United States v. West, 877 F.2d 281, 287-88 (4th Cir. 1989) (citations omitted).
 
 
 13
 The district court, in its opening pre-charge, instructed the jury that they were to consider the evidence against each defendant separately. Also, early in the trial, upon the request of defense counsel, the trial court instructed the jury:
 
 
 14
 The Court:All right. As I told you in the beginning, ... you're considering the evidence against [the defendants] as if they're being tried separately. My instruction I gave you yesterday applies throughout. You only take the testimony that a witness gives against individual ... defendants ...
 
 
 15
 J.A. 129. The Court repeated this instruction later on in the trial. Furthermore, the trial court required the prosecutor, upon calling a witness, to state to the jury which counts and which defendants the testimony would involve. In its final charge, the trial court instructed the jury:
 
 
 16
 Remember, you are only to concern yourselves with the case of each defendant on trial at this time. The cases against other persons, named or unnamed, are not before you for consideration and you are to concern yourself only with the case of each individual defendant on trial before you and the evidence as it pertains to that defendant's particular case.
 
 
 17
 A separate crime or offense is charged against one or more of these defendants in each count of the indictment. Each offense and the evidence pertaining to it should be considered separately and individually. The fact that you may find one or more of the accused guilty or not guilty of any of the offenses charged should not control your verdict as to any other defendant. You can find some defendants guilty and some not guilty and that should not affect the individual consideration of each defendant.
 
 
 18
 Let me emphasize to you that it is your duty to give separate, individual, and personal consideration to the case of each individual defendant. When you do so, you should and must analyze and evaluate what the evidence in the case shows with respect to each individual defendant, leaving out of consideration entirely the evidence as it may pertain to some other defendant or defendants.
 
 
 19
 In other words, we are, in fact, trying eight separate cases in this one trial, which cases are being tried together because they allegedly arose out of the same overall transaction or series or transactions. Nevertheless, each defendant is enti tled to have his or her case determined and decided separately by you from the evidence as to his or her own acts and statements and conduct and any other evidence in the case which may be applicable to that particular defendant.
 
 
 20
 You should consider each charge with the same degree of care that you would use if there were only one charge. The fact that the government brings several charges against a defendant, as I told you, is not evidence, nor is it evidence that some defendants are charged with more crimes than others. Charges are simply accusations.
 
 
 21
 J.A. 422-24.
 
 
 22
 The evidence presented against each defendant was easily compartmentalized, consisting mainly of testimony of purchases or sales of controlled substances with an individual defendant. In regard to defendants Preston Blalock, Herman Blalock and Jack Blalock, Jr., the evidence was direct and uncomplicated. Furthermore, the trial only lasted three days. Finally, there were no antagonistic or mutually exclusive defenses; no refusals by co-defendants to give exculpatory statements; and no attempts to introduce confessions of co-defendants which implicate non-confessing defendants.
 
 
 23
 In light of the above, we believe that the jury was fully able to compartmentalize the evidence against each defendant and make the requisite individual guilt determinations by following the court's cautionary instructions. There was no prejudicial "spill over" of evidence. Accordingly, we find that the district court did not abuse its discretion by denying the defendants' motions to sever.
 
 
 24
 The defendants place great reliance upon the refusal of the trial court to continuously give contemporaneous limiting instructions when evidence regarding the cocaine conspiracy or gun charges was introduced. Requests were made under Rule 105, Federal Rules of[2] Evidence.
 
 
 25
 Ms. Ingles:No questions and the same motion again under 402 and 403. I would also ask for again a limiting exclusion-I mean, a limiting instruction under the 105 rule.
 
 
 26
 The Court:Well, I'm not going to repeat it every time. I think that this jury is intelligent enough. I've repeated it twice.
 
 
 27
 J.A. 136. As cited previously, the trial court did give an encompassing limiting instruction in its final charge.
 
 
 28
 The timing of a requested limiting instruction under Rule 105 is left to the discretion of the trial court. Klein v. Sears Roebuck and Co., 773 F.2d 1421, 1426 (4th Cir. 1985) ("The more modern approach is to defer to the trial court's discretion as to the timing of the limiting instruction even in criminal trials"). Although the relatively large number of defendants with common last names would make contemporaneous limiting instructions preferable, we do not believe that these defendants were unfairly prejudiced by the timing of the district court's limiting instruction. The testimonial evidence was straightforward and was received over the very short period of three days. Furthermore, limiting instructions were given prior to and twice during the early part of the trial. We cannot find that the trial court abused its discretion by waiting until its final charge to give the limiting instruction.
 
 III.
 
 29
 Defendants Ricky Brawley, Jack Blalock, Sr., and Timothy Blalock assert that the trial court erred by denying their respective motions for judgment of acquittal. We review the sufficiency of the evidence under the standard of Jackson v. Virginia, 443 U.S. 307 (1979). The inquiry is whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt." In applying this standard, we construe all of the evidence, however adduced, in the light most favorable to the government, assuming its credibility, and drawing all favorable inference therefrom. Id. 319.
 
 
 30
 The elements of the crime of conspiracy under 21 U.S.C. § 846 are simple: (1) an agreement between two or more persons, (2) to commit in concert an unlawful act. United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). "To sustain the conspiracy conviction, there need only be a showing that defendant knew of the conspiracy's purpose and some action indicating his participation. These elements can be shown by circumstantial evidence such as his relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy." United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984) (citation omitted). Complete knowledge of all aspects of the conspiracy is not required. United States v. Mabry, 953 F.2d 127, 130 (4th Cir. 1991).
 
 A.
 
 31
 There is substantial evidence that from February 17, 1981, Ricky Brawley conspired with others to distribute marijuana, as charged in Count One, the marijuana conspiracy; to distribute cocaine as charged in Count Two, as well as possessing a semi-automatic pistol during and in relation to a drug trafficking crime. Danny Gault, a street dealer, testified that during the late 1970's he bought marijuana from Ricky Brawley, a nephew of Lillie Mae Blalock, at Mrs. Blalock's house when he could not get it from Lillie Mae Blalock or her sons. Mr. Gault would then sell the marijuana to his fellow students in high school. In 1981, Mr. Gault testified that he continued to buy marijuana from Ricky Brawley at Mrs. Blalock's house, stating that Ricky Brawley sold marijuana for Mrs. Blalock. Later on, Mr. Gault testified that: "I got some [marijuana] from Ricky [Brawley] out in the yard. And, you know, people would be right there in the yard. I ain't going to say it was directly her [Lillie Blalock], but there would be people come out of the house with the reefer and bring it to me when I wanted it."
 
 
 32
 Having been incarcerated from 1985 to March 1, 1989, on state marijuana charges, Ricky Brawley does not reappear until June 12, 1989, at which time the testimony of Mr. Gault reveals that Ricky Brawley is back at "Lillie Mae's," selling cocaine to Mr. Gault and an undercover police officer. Mr. Gault arranged another cocaine buy with Ricky Brawley for June 30, 1989, at which time Mr. Gault and the undercover officer went to Tim Blalock's trailer behind "Lillie Mae's" house to buy the cocaine. Both Ricky Brawley and Tim Blalock were present, armed with weapons, Ricky Brawley possessing the semi-automatic weapon. The transaction went awry, ending in a fight and shooting. Fortunately, Mr. Gault and the undercover officer escaped with their lives, with shots being fired when they fled.
 
 
 33
 Taken in a light most favorable to the government, there is more than sufficient evidence from which the jury could conclude that Ricky Brawley: (1) conspired to distribute marijuana; (2) conspired to distribute cocaine; and (3) possessed the firearm during and in relation to a drug transaction. In regard to the firearms charge, the evidence that Brawley carried the gun during a prearranged cocaine purchase which subsequently fell through, resulting in gunshots, "more than supports an inference that [Brawley] carried the weapon to facilitate his 'business'." United States v. Brockington, 849 F.2d 872, 876 (4th Cir. 1988).
 
 B.
 
 34
 Likewise, there is substantial evidence that from February 17, 1981, Jack Blalock, Sr. conspired with others to distribute marijuana, as charged in Count One, the marijuana conspiracy. Although there is no direct evidence that Jack Blalock, Sr. ever directly sold any marijuana, there is testimony that he would direct customers "around back" where they could purchase their marijuana from the others. This, coupled with the circumstantial evidence that Jack Blalock, Sr. owned the house, lived in the house, was married to Lillie Mae Blalock, and for a decade permitted a large-scale marijuana enterprise headed by his wife and son, to use his house as a base of operations and retail outlet, clearly leads to the conclusion that Jack Blalock, Sr. knowingly entered the conspiracy to distribute marijuana. "The totality of the circumstances shown by the government will often suffice to infer the agreement necessary for a conspiracy conviction." Mabry, supra at 130. Taken in a light most favorable to the government, there is more than sufficient evidence from which the jury could so conclude.
 
 C.
 
 35
 Timothy Blalock also challenges the sufficiency of the evidence regarding his conviction on Count One, the marijuana conspiracy; Count Two, the cocaine conspiracy; and Counts Three and Four, the firearm charges. His counsel has presented this issue for review pursuant to Anders v. California, 386 U.S. 738 (1967). Specifically, Timothy Blalock challenges the non-credibility of the exhibits and witnesses which, if believed by the jury, would clearly support conviction on all counts. Of course, credibility is an issue for the jury. After full review of the record, we find that there is more than sufficient evidence from which the jury could conclude that Timothy Blalock: (1) conspired to distribute marijuana; (2) conspired to distribute cocaine; and (3) on March 31, 1989, and on June 30, 1989, possessed a firearm during and in relation to the respective drug transactions.
 
 IV.
 
 36
 The final substantial ground cited by all of the defendants as error pertains to sentencing. All of the defendants claim that the district court erred in its determination of the total amount of marijuana involved in the marijuana conspiracy. Timothy Blalock and Ricky Brawley claim that the district court erred in its determination of the total amount of cocaine involved in the cocaine conspiracy. Ricky Brawley, Jack Blalock, Jr., and Timothy Blalock claim that the district court erred in its determination that the amounts of drugs involved were reasonably foreseeable by each of them.
 
 
 37
 The amount of drugs used to compute a base offense level need only be shown by a preponderance of the evidence. United States v. Powell, 886 F.2d 81, 85 (4th Cir. 1989). This is a factual finding by the trial court and will be reversed only if it is clearly erroneous. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990).
 
 
 38
 Under Application Note 1 accompanying Section 2D1.4 of the United States Sentencing Guidelines, "drug conspirators should be punished in a manner commensurate with the scale of the conspiracy, rather than their personal participation in the conspiracy." United States v. Campbell, 935 F.2d 39, 46 (4th Cir. 1991). Application Note 2 under this same section "provides the district court with discretion in determining the scale of the conspiracy and approximating the quantity of controlled substances relevant to the conspiracy." Id. 46.
 
 
 39
 Furthermore, under a conspiracy conviction, the defendant will be held accountable for the "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment. (n.1). As is the case for the factual determination of the total amount of drugs involved in the overall conspiracy, whether this total was foreseeable by the defendant is a question of fact which we review under the clearly erroneous standard. United States v. Vinson, 886 F.2d 740, 742 (4th Cir. 1989).
 
 
 40
 The government presented one witness at the sentencing for proof of the quantity of drugs involved in both the marijuana conspiracy and the cocaine conspiracy. Ranier "Bo" Pharr, a transporter for both conspiracies, testified that he personally delivered 4300 pounds of marijuana and 100 pounds of cocaine. Furthermore, the district court found that the amounts to which Mr. Ranier testified were very conservative estimates. No evidence was offered by any of the defendants.
 
 
 41
 Defendants assert that Mr. Ranier's testimony was not credible and that it related to some transactions which occurred prior to the commencement of the conspiracy as charged. In regard to the former, the district court found this testimony, which was subjected to vigorous cross-examination, to be credible. Mr. Ranier's testimony was not so internally inconsistent or manifestly incredible on its face as to permit our rejection of the district court's acceptance of its credibility. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985). As to the latter, the district court had every right to consider the prior transactions as relevant conduct. United States v. Williams, 880 F.2d 804 (4th Cir. 1989).
 
 
 42
 Accordingly, the district court found the coconspirators in Count One, the marijuana conspiracy, to have been involved with 4300 pounds of marijuana. Likewise, the district court found that the coconspirators in Count Two, the cocaine conspiracy, had been involved with 100 pounds of cocaine. Reviewing the testimony of Mr. Ranier, as well as the evidence the district court heard at trial, we find that the district court's determination of the amount of drugs involved in the respective conspiracies was not clearly erroneous.
 
 
 43
 Ricky Brawley asserts that since he was absent from Union County, South Carolina for long periods of time, mainly due to being incarcerated, the full amount of drugs should not be attributed to him. The district court found otherwise, believing that he never left the conspiracies and the amounts were reasonably foreseeable by him. The facts support the district court's finding. Mr. Brawley was selling marijuana at "Lillie Mae's" up until 1985, when he was arrested and incarcerated on state charges. He was released in May 1989 and, within a month of his release, was back at "Lillie Mae's," selling cocaine for Timothy Blalock. Furthermore, there was testimony of a thriving drug business in the prison system. On the record before us, we cannot say that the finding of the district court that the amount of drugs in both conspiracies were reasonably foreseeable by Mr. Brawley is clearly erroneous.
 
 
 44
 Jack Blalock, Jr. asserts that only five pounds of marijuana could be reasonably attributed to him, since this was the only amount tied directly to him through the testimony of Mr. Ranier. The guidelines provide that a defendant is accountable for the"conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant," not just what he individually handled. U.S.S.G. § 1B1.3, comment. (n.1). The evidence clearly shows that Jack Blalock, Jr. was an active member in the marijuana conspiracy over a substantial number of years. He was in a position to know the full magnitude of the distribution network organized by his mother and brother, and operated by his family. Considering the openness and extent of the sales at"Lillie Mae's," the district court was not clearly erroneous in finding that the total amount of marijuana was reasonably foreseeable by Jack Blalock, Jr.
 
 
 45
 We need not take much time in disposing of Timothy Blalock's claim that the total amount of marijuana and cocaine was not reasonably foreseeable by him. Timothy Blalock was the head of the cocaine enterprise and co-managed the marijuana enterprise with his mother. Even though he was in and out of jail during the entire period, he still was an active participant, including the dealing of drugs in the prison system. As Timothy Blalock stated, he was going to sell drugs until he died or the police killed him. Being the top man who knew of all the ramifications of both the marijuana enterprise and the cocaine enterprise, we can certainly say that the district court was not clearly erroneous in finding that the total amount of marijuana and cocaine was reasonably foreseeable by Timothy Blalock.
 
 V.
 
 46
 The remaining claims merit little discussion. First, the imposition of the life sentence plus twenty-five years without parole on Timothy Blalock does not amount to cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Albeit harsh, the sentence imposed is fully justified by the gravity of the crime, namely operating a large-scale marijuana and cocaine distribution organization which actively recruited juveniles as distributors and consumers. Since the sentence imposed is clearly not"grossly disproportionate" to the crime committed, there is no Eighth Amendment violation, Harmelin v. Michigan, 111 S.Ct. 2680 (1991). Second, Timothy Blalock contests the district court's use, at sentencing, of evidence not introduced at trial to find the amount of drugs involved. "The type of information to be considered by a sentencing judge is still unlimited." United States v. Bowman, 926 F.2d 380, 381 (4th Cir. 1991). There was no error in the district court's use of evidence which was not introduced at trial.
 
 VI.
 
 47
 After a thorough review of the record and the controlling authorities, we find no error in the convictions and sentences imposed. The judgments of the district court as to all of the defendants are affirmed.
 
 AFFIRMED
 
 
 [1]
 Kelly Fowler was also indicted in Count Two, as well as Count Three. She was convicted on both counts and sentenced, but has not filed an appeal
 
 
 [2]
 Rule 105. Limited Admissibility
 When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.