UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles Billy MABRY, a/k/a Maze,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Betty Jean MURPHY, Defendant–
Appellant.

Nos. 90–5490, 90–5685.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1991.

Decided Dec. 24, 1991.

As Amended Jan. 7, 1992.

David Ferris Tamer, Law Offices of David F. Tamer, Winston–Salem, N.C., for defendant-appellant Mabry.

Charles LeRoy White, II, Greensboro, N.C., for defendant-appellant Murphy.

Paul Alexander Weinman, Asst. U.S. Atty., Greensboro, N.C., argued (Robert H. Edmunds, Jr., U.S. Atty., Greensboro, N.C., on the brief), for plaintiff-appellee.

Before MURNAGHAN, Circuit Judge, HERLONG, District Judge for the District of South Carolina, sitting by designation, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

MURNAGHAN, Circuit Judge:

On December 26, 1989, a Grand Jury returned an indictment against defendants Charles Billy Mabry and Betty Jean Murphy, as well as against four named co-defendants. Count One of the indictment charged all of the defendants with conspiracy to distribute cocaine hydrochloride and

cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1) (1981). The indictment also charged Murphy with distribution of cocaine in violation of 21 U.S.C. § 845(a) (1981). Mabry was charged with two additional counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (1981).

Mabry entered a plea of not guilty to all charges at his arraignment on January 2, 1990. Murphy similarly entered a not guilty plea. The jury found both defendants guilty on all charges. The district judge denied all Rule 29 motions for acquittal.

Mabry was sentenced to 120 months in prison, and eight years of supervised release. Murphy was sentenced to 245 months in prison, and twelve years of supervised release. Both defendants gave timely notices of appeal, which we have consolidated for hearing.

## I.

The case involved an extensive drug conspiracy centered around Murphy. There is ample evidence of the involvement of many others in the conspiracy, including defendant Mabry. Beginning as early as December 1988, Murphy conspired with others, including Homer Peak and Phelia Fleming, to purchase cocaine and distribute it in the Winston–Salem area. At the beginning of Murphy's relationship with Fleming, Peak acted as the middleman between the two, with Murphy supplying him with quantities of drugs, that he would then give to Fleming who, with the assistance of her son Steven "Easy" Fleming, would sell the substance. After two such arranged transfers, Murphy began dealing directly with Fleming, who had proven her ability to sell the drugs quickly.

Peak was arrested on December 28, 1988 for selling .14 grams of crack to an undercover police officer. Fleming and members of her family and others were stopped by police responding to a tip on January 13, 1989. They successfully concealed 2.5 grams of crack they had in their possession and thus were not taken into custody.

In March and April of 1989, Fleming and another woman, Shirley Lewis, made two trips on commercial airlines and purchased or attempted to purchase drugs. The trips were sponsored and paid for by Murphy. During the second trip, on April 7, 1989, Fleming and Lewis refused to bring the cocaine they had purchased in New York back to North Carolina because they believed they were being followed. Murphy sent her former husband and another woman to New York to pick up the drugs. On the return trip, New Jersey police officers arrested them and discovered 11.5 grams of cocaine in the car. One of the couriers was recorded by New Jersey officials on the telephone conversing with Murphy. The courier told Murphy that he was having car trouble, and Murphy reminded him to "get the twelve" (referring apparently to the eleven and one-half grams of cocaine) out of the car.

In May of 1989 Donna Martin, who became the key witness connecting Mabry to the conspiracy, began to work for Murphy. Martin witnessed Murphy ingesting cocaine in the presence of Mabry on at least one occasion. She witnessed Mabry at the 204 Marvin Boulevard office of Murphy, and she often overheard discussions between the two about Mabry owing money to Murphy.

On May 29, 1989 Martin heard Murphy discussing a bargain drug purchase. Murphy told Martin that she would be purchasing a quantity of drugs for $18,000, and Martin testified that $16,000 of that had come from cash provided by Mabry.

On June 8, 1989, Mabry sold three "rocks" of crack (.8 grams) to a special agent of the Bureau of Alcohol, Tobacco, and Firearms. Mabry had received the powder cocaine from Murphy and had transformed it into "crack" himself. Later in June, Mabry, along with others, was witnessed picking up cocaine from Murphy at her office.

On August 1, 1989, Mabry sold 5.4 grams of crack to an undercover police officer. The next day, Fleming was arrested, and she called Murphy from custody. The con-

**130**

versation was taped, and it included discussion of past and future drug transactions.

## II.

We turn first to the sufficiency of the conspiracy testimony. In order to justify a conspiracy conviction, the government must show, first, that a conspiracy existed; then, that the defendant had knowledge of the conspiracy; and finally, that the defendant voluntarily became a part of the conspiracy. *United States v. Badolato,* 701 F.2d 915, 920 (11th Cir.1983). Commission of an overt act is not required to prove a drug conspiracy. *United States v. Goldman,* 750 F.2d 1221, 1226 (4th Cir.1984). "Proof of a conspiracy may of course be by circumstantial evidence; it need not and normally will not be by direct evidence." *United States v. Giunta,* 925 F.2d 758, 764 (4th Cir.1991). Complete knowledge of all aspects of the conspiracy is not required:

> [O]ne may become a member of a conspiracy without full knowledge of all of its details, but if he joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy, even though he had not participated before, and even though he played only a minor part.

*United States v. Roberts,* 881 F.2d 95, 101 (4th Cir.1989).

The totality of the circumstances shown by the government will often suffice to infer the agreement necessary for a conspiracy conviction. *United States v. Crockett,* 813 F.2d 1310, 1316 (4th Cir. 1987). The standard for reviewing a conspiracy conviction is that "the evidence and all reasonable inferences arising from it must be viewed in the light most favorable to the government, the prevailing party." *United States v. Laughman,* 618 F.2d 1067, 1075 (4th Cir.1980). And the issue on review is whether there is enough evidence so viewed to justify a conclusion of guilt by a trier of fact beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The conviction of Mabry for conspiracy with Murphy was amply proven.

There was evidence of Murphy's extensive conspiracy, of Mabry's consistent involvement with Murphy, of his presence when she ingested drugs, of his discussions with her about owing her money, of his providing her $16,000 to supplement drug purchase funds, of his appropriating drugs from Murphy's office, and of his selling crack on two occasions (one sample of which was produced from a quantity of cocaine obtained by Mabry from Murphy).

Mabry has argued that "there is little evidence which would implicate [him] in any conspiracy." Though there is more than just a little evidence here, a little evidence is sufficient to uphold a District Court's denial of a motion for acquittal. All that the government must show is that the trier of fact could reasonably infer from the evidence, viewed in the light most favorable to the government, that the defendant was a willing participant in an ongoing conspiracy. There is more than enough evidence to support such an inference in this case, and accordingly, the district court's denial of the Rule 29 motion must be affirmed.

## III.

The next issue involves contentions growing from the court's failure to disclose the identity of the government informant. On February 16, 1990, an *in camera* hearing was conducted in response to a motion by Mabry to compel the government to disclose the identity of its confidential informant. The Supreme Court in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), recognized an "informer's privilege." According to the Court:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with the enforcement of that law.... The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.

*Id.* at 59, 77 S.Ct. at 627. This privilege is not absolute however. There are limits to the privilege arising from:

> fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of the accused, or is essential to the fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure....

*Id.* at 60–61, 77 S.Ct. at 628. The Supreme Court ruled that a balance must be struck between the interests in law enforcement, and the equally compelling requirement that the rights of the accused be protected. *Id.*

The testimony of the informant in *Roviaro* was central to the case against the defendant. The Court held that the district court committed a reversible error "when it allowed the Government to refuse to disclose the identity of the undercover employee who had taken a material part in bringing about the possession of certain drugs by the accused." *Id.* at 55, 77 S.Ct. at 625.

We have drawn a distinction in applying *Roviaro*, "between informants who are 'participants' in a criminal transaction, and those who are 'mere tipsters.'" *United States v. Price*, 783 F.2d 1132, 1138 (4th Cir.1986). In *Price*, the informant in question was an undercover DEA agent who set up the deal with the accused. He was an active participant in phone conversations and in relaying of offers and acceptances. The district court denied defendant's motion for disclosure without a hearing. We ruled that:

> [o]rdinarily, knowledge of the identity of a tipster would not be essential in preparing the defense of the accused and the public interest in protecting such informants should weigh heavily in favor of nondisclosure. However, where the informant is an actual participant, and thus a witness to material and relevant events, fundamental fairness dictates that the accused have access to him as a

potential witness. In such instances disclosure of identity should be required. *Id.* at 1138.

In another case, more closely on point, we addressed the treatment of an informant who falls in a middle ground between "participant" and "tipster." In *United States v. Brinkman*, 739 F.2d 977 (4th Cir.1984), the informant had two discussions with the defendant, and introduced him to the hitman he was seeking. But the important aspects of the case concentrated on the discussion between the defendant and the hitman, for which the informant was not present. We ruled that it would be a mistake to get caught up in the semantics of whether an informant was in "tipster" or "participant" status. 739 F.2d at 981. The key to the review of a district court's failure to compel disclosure must be a balancing of the competing interests "in light of the particular circumstances of the case." *Id.* In *Brinkman*, we upheld the district court's reasoning:

> This Court is persuaded that the public interest in maintaining the anonymity of an undercover agent who, according to the Government's statement, is currently involved in other investigations which would be virtually crippled by revealing the agent's true identity, outweighs the need for the Defendant to learn the true identity of an agent who was not a witness or a participant in the crime with which the Defendant has been charged, and was minimally involved with introducing the Defendant to a government agent.

*Id.* at 981. We affirmed the district court's decision to deny disclosure. *Id. See also United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir.1985), where we ruled that disclosure is not required despite the fact that a criminal defendant may have no other means of determining what relevant information the informant possesses.

The case at hand contains strikingly similar facts to those in *Brinkman*. In the instant case, the informant introduced to Mabry the special agent who bought cocaine from Mabry. Apparently, the special agent did not purchase cocaine from Mabry

the first time he was introduced but the second time he contacted him. The informant was not a witness to the transfer. Mabry has offered no evidence that the informant had any more connection with the actual crimes involved in the case than the mere introduction.

*Roviaro* indicates that the violation of the "informer's privilege" is justified only "[w]here the disclosure of an informer's identity or of the contents of his communication, is relevant and helpful to the defense of the accused...." *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 628. *See also McLawhorn v. State of North Carolina,* 484 F.2d 1, 4 (4th Cir.1973) (interpreting *Roviaro,* we ruled that the issue of whether nondisclosure is compelled is determined by the circumstances in each case, "taking into account the crime charged, and the possible defenses, the possible relevance of the informant's testimony, and other related factors").

Mabry has given no direct indication of how the testimony of the informant might be in any way helpful to his defense. At trial, his attorney somewhat cryptically expressed his belief that disclosure of the informant's identity "might give me the opportunity to find, to find out who introduced him and find that person to ask him if he can—if he did this act." Yet appellant's brief indicates only a vague reference to the special agent's difficulty in identifying Mabry, suggesting that the informant, if put on the stand, might indicate a similar inability to identify Mabry, which would serve to further undercut the agent's testimony. We have ruled that a "defendant must come forward with something more than speculation as to the usefulness of ... disclosure [of a confidential informant.]" *Smith,* 780 F.2d at 1108.

The *in camera* examination of the witness by the district judge sufficed to indicate that the informant would not have produced relevant information that would have assisted the defense. "The decision of whether the testimony of the informer will be relevant and helpful is usually within the trial judge's discretion." *Id.*

Our review of the district court's decision on such an issue requires us to affirm unless an abuse of discretion has been shown. Given the relatively limited role played by the informant in the actual crimes of which Mabry has been convicted, there is no indication that the district court abused its discretion in denying the motion for disclosure after its *in camera* examination of the informant.

## IV.

■ Finally, we consider Murphy's claim of vindictiveness by the government in sentencing. The United States Sentencing Guidelines in section 6A1.3 states that:

When a factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving the dispute ... the court may consider relevant information without regard to its admissibility under the rules of evidence....

Murphy has admitted that she challenged the findings of the Presentencing Report. Not only was it within the discretion of the district court to respond to the challenge by convening a sentencing hearing, the Court was *required* to do so under section 6A1.3.

Murphy has argued that the hearing provided the opportunity for a witness, Donna Martin, to testify about additional cocaine transactions involving Murphy which were not mentioned at trial. Murphy's further contention is that she would not have faced the additional testimony had she not exercised her right to challenge the presentencing findings. Hence, it is claimed, the government's response to her challenge, bringing witnesses to refute it, constituted a vindictive attempt to chill her initiative to raise the claim, as well as the future attempts of others similarly situated to raise such claims. Defendant bases this challenge on the fact that the government offered testimony of even greater cocaine possession than had been introduced at trial.

Murphy has cited and tried to distinguish *United States v. Wilson,* 896 F.2d 856 (4th

Cir.1990), a case that held that evidence of quantities of drugs not introduced at trial may be properly introduced for the first time at the sentencing stage. There the defendant had been held responsible in the presentence report for 21 kilograms of cocaine, and claimed actual responsibility for only 10 kilograms. But on cross and re-cross examinations, defendant admitted to possession of upwards of 15 kilograms of cocaine. The court, responding to the appellant's attack that inclusion of the evidence brought for the first time at sentencing violated his rights, ruled that:

> Once any factor is in dispute, under § 6A1.3, both parties are to be given adequate opportunity to present information regarding that factor. Rigney put the amount of cocaine involved in dispute by challenging the conclusion of the presentencing report.... At that point, both the government and Rigney were free to present to the district court information concerning the amount of cocaine involved....

*Id.* at 858.

Murphy has made a faulty assumption. She has attempted to distinguish *Wilson* by arguing that there was no apparent vindictiveness there, relying on the fact that the government in *Wilson* did not attempt to seek a higher sentencing level than was to apply under the original sentencing report. The short answer is that the language of the opinion in *Wilson* gives no indication that the government would be prevented from bringing any relevant evidence at the hearing stage. As *Wilson* states, once issues in the sentencing report are brought into dispute, both sides are then free to bring any relevant evidence to resolve the dispute at the sentencing hearing.

As the government has pointed out, the witness whose testimony at the sentencing hearing about whom Murphy has complained, testified in open court at the trial. She also, of course, appeared at the sentencing hearing and was subjected to cross-examination by Murphy's counsel.

The presumption of vindictiveness set out in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), relied upon by appellants, is not applicable here following the Supreme Court's opinion in *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). In *Smith*, the Court severely limited the *Pearce* opinion, and asserted that when there is no "reasonable likelihood" that an increase in sentence is the product of actual vindictiveness, "the burden remains upon the defendant to prove actual vindictiveness...." *Id.* at 799–800, 109 S.Ct. at 2205. In the present case, the convening of the post-trial sentencing hearing failed to create a "reasonable likelihood" that the government expressed a vindictive motive by merely following the procedures set out in the Sentencing Guidelines, and appellant has failed to meet the burden of showing any vindictiveness.

Accordingly, the decisions of the district court are

AFFIRMED.