37 F.3d 1496
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Darren Andrew DICKERSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darren Andrew DICKERSON, Defendant-Appellant.
 Nos. 92-5793, 93-5070.
 United States Court of Appeals, Fourth Circuit.
 Argued December 10, 1993.
Decided October 7, 1994.
 
 1
 Appeals from the United States District Court for the Southern District of West Virginia, at Charleston. Charles H. Haden II, Chief District Judge. (CR-92-163)
 
 
 2
 Argued: Matthew Anthony Victor, Charleston, WV, for appellant.
 
 
 3
 Argued: John Kirk Brandfass, Asst. U.S. Atty., Charleston, WV. On brief: Michael W. Carey, U.S. Atty., Charleston, WV, for appellee.
 
 
 4
 S.D.W.Va.
 
 
 5
 AFFIRMED.
 
 
 6
 Before RUSSELL and HALL, Circuit Judges, and KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.
 
 OPINION
 PER CURIAM
 
 7
 Darren Dickerson was convicted by a jury on a three count indictment which charged him with conspiracy to distribute crack cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 846, and distribution of crack cocaine in violation of 28 U.S.C. Sec. 841(a)(1). He appeals the conviction. Concluding that a rational trier of fact could have found Dickerson guilty beyond a reasonable doubt, we affirm.
 
 I.
 
 8
 As required, we state the facts in the light most favorable to the government. Jackson v. Virginia, 443 U.S. 307, 317-19 (1979); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). On April 9, 1992, a confidential informant named Vince Edwards approached the Charleston, West Virginia, Metropolitan Drug Enforcement Network Team office which was investigating Dickerson, and told the officers that he had spoken with Dickerson (also known as John) and had arranged a purchase of crack cocaine for the next day. In an effort to obtain favorable treatment on then pending state charges, Edwards agreed to make a controlled buy.
 
 
 9
 On April 10, 1992, Detective Jack Jordan searched Edwards, wired him, gave him $500 in marked United States currency and drove him to Zorona's, a clothing store owned by Dickerson. Edwards entered the store, purchased a T-shirt, then approached the counter and asked the clerk where Darren was. Told that Darren was not in the store, Edwards asked whether he had left something. The clerk, Edward Reed, gave him a key that Darren Dickerson had told him to give to a friend. Edwards then gave Reed $500, which Reed put in an envelope. Edwards wrote "to John from Vince" on the envelope and Reed put it under the register. Edwards left the store and proceeded to the Greyhound Bus station where he used the key to obtain a package of crack cocaine from a locker. During all of this time, he was under surveillance by detectives from the drug unit.
 
 
 10
 On April 17, 1992, Edwards told the officers of the drug unit that he had arranged another buy of crack cocaine from Mr. Dickerson. He was searched again, fitted with a body wire, given $400 in marked United States currency, and driven to an intersection near Zorona's. Dickerson pulled up near the intersection in a black and red S-10 Blazer and Edwards got into the car. The officers who were conducting the surveillance lost sight of the car, but it was later sighted and followed by other officers. Edwards was then let out of the vehicle and picked up by the original team. He gave them three baggies of crack cocaine and Darren Dickerson's beeper number.
 
 
 11
 Dickerson was arrested at his clothing store on May 22, 1992, and a radio frequency detector was found on the premises. Edwards was paid $280.00 for his efforts, in addition to whatever favorable treatment he received on his state charges. Reed was never charged.
 
 
 12
 At the close of the government's case, pursuant to Fed.R.Civ.P. 29 Dickerson moved for judgment of acquittal as to Count One. The district court denied the motion. Dickerson then testified that none of the events ever happened, that he never used or distributed drugs, that the pager was used in his business and that the radio frequency detector was from an electronics hobby. After several character witnesses, the defendant rested and renewed his motion for acquittal on the conspiracy count.
 
 
 13
 The district judge conceded that the evidence on the conspiracy was thin, but held that Reed could have been charged as an aider and abettor and, therefore, a co-conspirator, and allowed the count to go to the jury.
 
 II.
 
 14
 It is well settled that in order to prove a conspiracy, the government must prove: (1) an agreement between two or more persons (not including government agents), (2) to commit in concert an unlawful act. United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). In assessing whether the government has established the necessary agreement, we look to the totality of the circumstances. United States v. Bell, 954 F.2d 232, 236 (4th Cir.), cert. denied, 61 U.S.L.W. 3260 (1992). The government need not show that the defendant knew all the conspirators, had knowledge of all the details of the conspiracy, or that he had a major role in the conspiracy. United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 112 S.Ct. 3051, 120 L.Ed.2d 918 (1992). Nor is it incumbent upon the government to prove the commission of an overt act in furtherance of the conspiracy. United States v. Mabry, 953 F.2d 127, 130 (4th Cir.1991), cert. denied, 112 S.Ct. 1951 (1992). Because conspiracies are intrinsically secretive, the government may prove its case by circumstantial, as well as direct, evidence. Giunta, 925 F.2d at 764; United States v. Brown, 856 F.2d 719, 711-12 (4th Cir.1988).
 
 
 15
 The appellant argues that the government failed to prove that there was an agreement between any persons to distribute drugs. To demonstrate the weakness of the government's conspiracy evidence, he points to an argument at the bench during which the government urged that Dickerson "had to obtain that crack cocaine from someone else and that he, therefore, had to conspire with his supplier to make the two distributions." The government concedes that Edwards, as the informer and, therefore, government agent cannot be the coconspirator, citing United States v. Chase, 372 F.2d 453, 459 (4th Cir.), cert. denied, 387 U.S. 907, 913 (1967). However, it points out that the evidence need not directly prove the conspiracy; a tacit agreement will suffice. See United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989).
 
 
 16
 We conclude that the evidence of Reed's involvement was sufficient to establish a conspiracy. Through the testimony of Edwards and Reed, the government was able to show that arrangements had been made to accept the money and to turn over the key to the locker which held the cocaine. Edwards, though admittedly not the most upstanding citizen, testified that he had made the arrangements with Dickerson, and that in Dickerson's absence Reed knew what to do. Reed understandably minimized his own knowledge and role.* His story, however, was consistent with that told by Edwards, and was corroborated by the investigating officers. The jury was entitled to believe that story.
 
 
 17
 As to the sufficiency of the evidence regarding the substantive counts of distribution, the government presented not only the testimony of the officers and Edwards, but also the cocaine obtained from Edwards after his meetings with Reed and Dickerson.
 
 CONCLUSION
 
 18
 The cumulative effect of the evidence in this case constitutes sufficient evidence to support the jury's verdict that Dickerson was a participant in a conspiracy to distribute, and in fact distributed on two occasions, crack cocaine. Accordingly, we affirm the district court's judgment.
 
 AFFIRMED
 
 
 *
 Dickerson argues that Reed could not have been a co-conspirator because he was not indicted, but offers no law in support of that argument. Given the difficulty establishing the case against Dickerson, it can hardly be a surprise that the government would not indict someone for handing over a key