**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-4263**

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

EMMANUEL THAD EREME,

                                        Defendant - Appellant.

---

**No. 05-4327**

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

EMMANUEL THAD EREME,

                                        Defendant - Appellant.

---

**No. 06-4575**

---

UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

        versus

EMMANUEL THAD EREME,

                                    Defendant - Appellant.

───────────────

Appeals from the United States District Court for the District of Maryland, at Greenbelt.  Peter J. Messitte, District Judge.  (CR-02-478-PJM; 8:02-cr-00478-PJM-2)

───────────────

Submitted:  February 9, 2007          Decided:  April 9, 2007

───────────────

Before WILLIAMS, MOTZ, and SHEDD, Circuit Judges.

───────────────

Nos. 05-4263, 06-4575 affirmed; No. 05-4327 dismissed by unpublished per curiam opinion.

───────────────

Steven Gene Berry, Rockville, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Deborah Johnston, Bryan E. Foreman, Sandra Wilkinson, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Emmanuel Thad Ereme appeals his convictions for conspiracy to dispense, distribute, and possess with intent to distribute and unlawful dispensation of Schedule II controlled substances (No. 05-4263). In addition, Ereme appeals the denial of his motion for a new trial (No. 06-4575). Finding no error, we affirm.[1]

I

Beginning in 1997, Ereme, a licensed pharmacist, owned and operated Hremt Pharmacy ("Hremt") in District Heights, Maryland.[2] Although Ereme initially served as the sole pharmacist at Hremt, he gradually added other pharmacists to his staff. In addition, Ereme employed pharmacy technicians who assisted with the filling of prescriptions.

In September 1999, the Maryland Drug Control Office, responding to an anonymous tip regarding Hremt's practices, conducted an audit on generic and brand Percocet. The audit uncovered several irregularities, including facsimile and

---

[1]Ereme also appeals an order of forfeiture entered by the district court (No. 05-4327). By not raising the validity of the forfeiture order in his opening brief, Ereme has waived further consideration of this appeal. Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999). Therefore, we dismiss the appeal in No. 05-4327.

[2]We recite the facts in the light most favorable to the Government. See United States v. Murphy, 35 F.3d 143, 144 (4th Cir. 1994).

3

photocopied prescriptions, large quantities of Schedule II drugs being dispensed, and the filling of controlled substance prescriptions whose refill interval was too soon. The case was referred to the Drug Enforcement Administration ("DEA"), which subsequently received confirmation as to the irregularities discovered earlier. The DEA investigation led to a search of Hremt's premises on November 2, 2000. This search and further audits indicated that prescriptions written for Joseph Scirigione and prescriptions written by Dr. Beverly Wheatley were suspect.

Between May 8, 1997, and December 31, 2001, Joseph Scirigione and his common law wife, Theresa Gant, obtained 26,400 tablets of Hydromorphone (Dilaudid) and 32,850 tablets of Dolophine (Methadone) from Hremt. These drugs were obtained through 310 prescriptions, 298 of which were for Scirigione and were presented by him. These prescriptions were written on photocopied forms with the letterhead of various medical practices. However, 300 of the prescriptions bore the signature and DEA number of Dr. Robert Hunt and ten bore the signature of Dr. Michelle Craig. Later testimony by Dr. Hunt indicated that his signature was forged on the prescriptions, that a physician would not have issued the number of prescriptions which Scirigione presented, and that the dosages of medication in Scirigione's prescriptions would have proved fatal for any patient.

4

Dr. Beverly Wheatley was a licensed dentist who practiced from 1977 to 2001 in the District of Columbia and Maryland. Based on the evidence disclosed in the 2001 search of Hremt, DEA investigators searched Wheatley's office in April, 2002. There they discovered many irregularities, including a sign advertising the sale of prescriptions for $25 each. Wheatley was arrested and pled guilty to conspiracy to distribute and possess with intent to distribute Schedule II substances. Wheatley testified that she abused prescription medications herself and that she sold prescriptions to patients and directed them to Hremt. Significantly, Wheatley also testified that she signed the prescriptions she issued using various names, including her maiden name, her daughter's name, and her husband's name.

On July 21, 2004, Ereme was indicted under a third superseding indictment for conspiracy to dispense, distribute, and possess with intent to distribute Schedule II controlled substances, including Oxycodone (Percocet or Roxicet), Hydromorphone (Dilaudid), and Dolophine (Methadone). The case was tried to a jury, which found Ereme guilty as to all counts. Ereme now appeals, raising several arguments for our consideration.

II

A.

Ereme first contends that the district court improperly limited his testimony on direct examination and thereby infringed his constitutional right to present a defense. Ereme bases this contention on the district court's denial of his request for additional time in which to complete his defense after he had exhausted the seven days granted by the district court. We review this claim under an abuse of discretion standard, and we will not disturb the district court's decision unless it acted arbitrarily or irrationally. United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994).

While a defendant has a constitutional right to testify as part of his own defense, Rock v. Arkansas, 483 U.S. 44, 51-52 (1987), this right is subject to reasonable restrictions, United States v. Scheffer, 523 U.S. 303, 308 (1998). Specifically, a district court, in its discretion, may exercise reasonable control over the interrogation of witnesses and the presentation of evidence in order to avoid needless waste of time. Fed. R. Evid. 611(a). A district court's actions in this regard do not abridge a defendant's right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve. Scheffer, 523 U.S. at 308.

6

The district court granted Ereme's original request for seven days in which to present his defense. At the completion of this time, the district court permitted Ereme to continue his defense on the morning of the eighth day but refused any additional time. This restriction was reasonable and does not constitute an abuse of discretion. Ereme was aware of the district court's structure of the trial schedule and of the time allotted to each of the parties. While Ereme did not testify as to the details of each of the more than 800 transactions involved, he did testify about his customers in general and about the Scirigione and Wheatley cases in particular. As the district court noted, Ereme effectively answered the charges against him and contested each of the elements of those charges. Further, he answered the allegations made by his employees regarding his knowledge of the illegal prescriptions and his role in any conspiracy. Ereme has failed to show what additional evidence would have been introduced through his continued testimony, other than further denials of the individual transactions involved. In these circumstances, the district court did not abuse its discretion by placing reasonable time constraints on Ereme's testimony.

## B.

Ereme next challenges the sufficiency of the evidence supporting his conviction for conspiracy to dispense, distribute, and possess with intent to distribute controlled substances. "In

7

reviewing the sufficiency of the evidence . . . our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support" the conviction. United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal punctuation omitted). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

As relevant here, a conviction for conspiracy in violation of 21 U.S.C. § 846 requires the Government to prove beyond a reasonable doubt (1) that there was an agreement between two or more persons to unlawfully dispense, distribute or possess with intent to distribute Schedule II controlled substances; (2) that the defendant knew of the conspiracy; and (3) that the defendant knowingly and voluntarily became a part of the conspiracy. Burgos, 94 F.3d at 857. Ereme contends that he did not knowingly and voluntarily become a part of any conspiracy. The element of knowledge, however, may be satisfied by a showing that a defendant acted with willful blindness, as willful blindness is a form of constructive knowledge which "allows the jury to impute the element of knowledge to the defendant if the evidence indicates that he purposely closed his eyes to avoid knowing what was taking place around him." United States v. Schnabel, 939 F.2d 197, 203 (4th

8

Cir. 1991).[3] Because willful blindness serves as a proxy for knowledge, there is nothing inconsistent in saying that a defendant knowingly joined a conspiracy because he was willfully blind to the conspiracy's existence and purpose. See United States v. McIver, 470 F.3d 550, 563-64 (4th Cir. 2006) (noting that willful blindness is sufficient to establish knowledge of a conspiracy). As for voluntariness, the Government need not show that a defendant entered a conspiracy with full knowledge of its details or that he participated in all phases of the conspiracy; rather, it need only show that he willfully participated in the conspiracy at some stage with knowledge of the unlawful nature of his participation. United States v. Capers, 61 F.3d 1100, 1108 (4th Cir. 1995); United States v. Mabry, 953 F.2d 127, 130 (4th Cir. 1991). Furthermore, a defendant's voluntary participation in a conspiracy may be proven through circumstantial evidence. Capers, 61 F.3d at 1107.

There is ample evidence which supports a finding that Ereme voluntarily entered the conspiracy while willfully blind to its aims. Expert testimony indicated that a reasonable pharmacist

---

[3]Ereme maintains that the district court erred in refusing to submit to the jury his requested charge on willful blindness. We have examined the willful blindness instruction given by the district court, and we find no abuse of discretion. See United States v. Whittington, 26 F.3d 456, 462 (4th Cir. 1994) (noting requirements for willful blindness instruction). Ereme also argues that the district court's instruction on good faith was not sufficient. Because Ereme raised this argument in a Fed. R. App. P. 28(j) letter rather than in his opening brief, we deem it waived. Edwards, 178 F.3d at 241 n.6.

9

would have stopped filling prescriptions based upon the numerous signs of fraud present in the Scirigione and Wheatley cases. Other testimony noted that doctors do not repeatedly write overlapping 30-day prescriptions for Dilaudid or Methadone, as the fraudulent prescriptions presented by Scirigione had done. Sam Kuti, a pharmacist who worked under Ereme, testified that he alerted Ereme to his suspicions regarding the Scirigione prescriptions but that Ereme simply instructed Kuti to refer the questionable prescriptions to him. Further, Wheatley testified that she discussed her addiction problem with Ereme who advised her how to write prescriptions to avoid insurance company inquiries. Finally, testimony indicated that Scirigione paid Ereme far more than the market value for his prescriptions. This evidence, taken as a whole, sufficiently supports Ereme's convictions.[4]

## C.

Finally, Ereme contends that the district court abused its discretion by denying his motion for a new trial based on newly discovered evidence. Ereme filed the motion on November 14, 2005, and based it upon the statements Rodney Jackson, a co-conspirator, made at his sentencing. We review the district court's denial of a motion for new trial for abuse of discretion. <u>United States v.</u>

---

[4]Ereme also maintains that the Government's theory of conspiratorial liability under <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946), was defective. We have considered this argument, and we reject it.

Fulcher, 250 F.3d 244, 249 (4th Cir. 2001).  Having reviewed the record and the submissions of the parties, we agree with the Government that the district court did not abuse its discretion when it denied Ereme's motion for a new trial.  We therefore affirm based on the reasoning of the district court.  United States v. Ereme, 8:02-cr-478-PJM-2 (D. Md. 2006).

III

Based on the foregoing, we affirm the judgment of the district court in No. 05-4263 and No. 06-4575, and we dismiss the appeal in No. 05-4327.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

Nos. 05-4263, 06-4575 AFFIRMED;
No. 05-4327 DISMISSED

11