**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-4331**

———————

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

VINCENT A. WILLIAMS, a/k/a V,

            Defendant - Appellant.

———————

**No. 13-4467**

———————

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

TORRY VON ZENON,

            Defendant - Appellant.

———————

Appeals from the United States District Court for the Eastern
District of Virginia, at Richmond.  Henry E. Hudson, District
Judge.  (3:12-cr-00047-HEH-10; 3:12-cr-00047-HEH-5)

———————

Submitted:  February 26, 2014      Decided:  April 29, 2014

———————

Before TRAXLER, Chief Judge, and WILKINSON and KEENAN, Circuit
Judges.

———————

Affirmed by unpublished per curiam opinion.

———————————————

John F. McGarvey, JOHN F. MCGARVEY, ATTORNEY AT LAW, Glen Allen, Virginia, for Appellant Vincent A. Williams. Steven P. Hanna, Richmond, Virginia, for Appellant Torry Von Zenon. Dana J. Boente, Acting United States Attorney, Peter S. Duffey, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

———————————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Vincent A. Williams ("Vincent") and Torry Von Zenon (collectively, "Appellants") appeal their convictions for conspiracy to possess with the intent to distribute five kilograms or more of cocaine hydrochloride, see 21 U.S.C. § 846, and attempting to possess with the intent to distribute cocaine hydrochloride, see 21 U.S.C. § 846, 18 U.S.C. § 2. Finding no error, we affirm.

I.

Appellants were both indicted in a first superseding indictment. They both pleaded not guilty and were convicted following a jury trial. Vincent and Zenon were sentenced to 250 months' and 384 months' imprisonment, respectively. They now challenge the sufficiency of the evidence supporting their convictions. Viewing the evidence presented at trial in the light most favorable to the government, as we must, see United States v. Penniegraft, 641 F.3d 566, 571 (4th Cir. 2011), the record reveals the following.

Vincent's stepfather Dion Williams ("Dion") was a drug dealer in Richmond, Virginia. Beginning in January 2012, he contacted a man named Hiram Alvarez, who lived in California, concerning Dion's interest in purchasing a large quantity of cocaine. Dion told Alvarez he could raise as much as $2.5 million for the purchase of 100 kilograms of cocaine. Alvarez,

3

in turn, contacted a man known to him by the name "Jose." Unbeknownst to Alvarez or Dion, Jose, whose full name was Jose Burgueno Urias, was working as a confidential source for the Drug Enforcement Administration ("DEA"), and Urias reported the solicitation to the DEA. The DEA and Urias agreed that Urias would set up the transaction, even though the drugs would never actually be delivered.

On that basis, Urias undertook to set up the deal. Dion offered to allow Alvarez or his representative the chance to come to the East Coast and make the transaction with Dion. Alvarez selected Pedro Santana to be his agent. Accordingly, Urias and Santana, along with one other confidential informant, flew into Richmond, Virginia on January 26, 2012. Upon arriving, they rented a car, drove to a Baltimore-area hotel, and met with Dion in the early morning of January 27. At approximately 9:30 a.m., Dion led the group to a nearby apartment in a gated complex. The apartment was leased to Zenon.

The fact that the apartment was in a gated community made it difficult for law enforcement to conduct surveillance. However, almost immediately after Dion brought Urias and Santana to the apartment, DEA Special Agent Jason Alznauer observed Zenon standing near the apartment complex's front gate where he appeared to be watching cars coming and going through the gates.

4

In fact, Alznauer told his partner that he believed Zenon was conducting counter-surveillance. Zenon was wearing a black knit skull cap and black puffy jacket. Zenon was observed soon thereafter standing at the end of the apartment building talking on a cellular telephone and then walking around the back of the building. Within a few minutes, a man matching Zenon's description was observed at the other corner of the apartment complex, standing in the middle of the road, looking around.

The meeting inside the apartment lasted less than an hour, during which time Dion showed the confidential informants approximately $300,000 in currency and told them he would need more time to obtain the rest of the money.[1] At about 10:30 a.m., Santana and the confidential informants left the apartment and returned to the hotel.

Dion later contacted them and they agreed to return to the apartment around 6:00 p.m. Approximately 10 minutes before the men arrived, officers observed a green pickup truck drive into Zenon's garage, and they saw Zenon exit the vehicle wearing a black puffy jacket, a reflective vest, and a hardhat. He removed a plastic trashbag from the truck and placed it in front

---

[1] When the men went upstairs, they encountered Vincent sleeping on a sofa. Dion told Urias not to worry because Vincent was his son. Vincent got up and went into the bedroom and did not come out during that meeting.

5

of the garage, then moved the truck out of the garage and parked it in a parking space nearby. Zenon next reentered the garage on foot and shut the outer door.

When Santana, Dion, and the informants arrived a few minutes later, they parked in the same garage and entered the apartment through stairs from the garage. Vincent was waiting in the garage when the men arrived. Vincent picked up a box containing a large amount of currency and carried it into the apartment.

Inside the apartment, Dion, Vincent, the two informants, and Santana spent about two and a half hours counting the currency, primarily using electronic money counters. Vincent, who already knew how to operate the machines, was helping "during the entire time." J.A. 100. In Vincent's presence, Dion proceeded to discuss the drug deal and the future dealings that Dion anticipated. He specifically noted that Vincent had not enjoyed studying or working in a restaurant and that the only thing he did like was "counting kilos and counting paquetes," which Urias testified referred to money packages and cocaine. J.A. 101. Urias testified that he also had discussions at that time with Dion about the 100 kilograms of cocaine that Urias was going to give him in exchange for the money. Urias explained that because the cocaine kilograms were square in shape, he referred to them as "squares." J.A. 102.

6

Urias further testified that Dion had told him at this time that it would be Vincent who would be coming to the apartment to receive future cocaine purchases.  Urias testified that Dion had advised him that they were safe and secure because Dion had people outside "guarding and to make sure no police came."  J.A. 104.

As the amount of money the men had counted approached $1.5 million, Urias told Dion that they would begin the process of retrieving and bringing up the 100 kilograms of cocaine, and Urias, Santana, and the other informant left the apartment. Shortly thereafter, a S.W.A.T. team made entry into the apartment through the front door and officers executed a search warrant on the apartment.  The first officer to enter observed Vincent flee the living room to the back of the apartment carrying what appeared to be a handgun.  Officers found Vincent hiding in a bathroom, and they located a .45 caliber handgun along the path Vincent had taken toward the bathroom.  Officers found Dion and Zenon hiding in the pantry in the kitchen.

The officers also found approximately $1.5 million stacked in plain view on the carpet in the living room; two money counting machines, both of which were turned on, in the kitchen; a .44 caliber revolver on the kitchen counter near where the officers had found Zenon; 15 cellular telephones; packing tape to package the cash; and a black puffy coat, hard hat, and

7

reflective vest, matching the description of those that Zenon had been seen wearing earlier.

II.

A.

Vincent argues that the evidence was insufficient to sustain his conspiracy conviction. We disagree.

The "jury verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (emphasis and internal quotation marks omitted). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Green, 599 F.3d 360, 367 (4th Cir. 2010) (internal quotation marks omitted).

"To prove conspiracy to possess cocaine with intent to distribute, the Government must establish that: (1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." United States v. Wilson, 135 F.3d 291, 306 (4th Cir. 1998) (internal quotation marks omitted). "Proof of a conspiracy may of course be by circumstantial evidence; it need not and normally will not be by

8

direct evidence." <u>United States v. Mabry</u>, 953 F.2d 127, 130 (4th Cir. 1991) (internal quotation marks omitted). "Once it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." <u>United States v. Brooks</u>, 957 F.2d 1138, 1147 (4th Cir. 1992). To prove the crime of attempted possession of cocaine with intent to distribute, the government must establish

> that (1) the defendant had the requisite intent to commit a crime; (2) the defendant undertook a direct act in a course of conduct planned to culminate in his commission of the crime; (3) the act was substantial, in that it was strongly corroborative of the defendant's criminal purpose; and (4) the act fell short of the commission of the intended crime due to intervening circumstances.

<u>United States v. Pratt</u>, 351 F.3d 131, 135 (4th Cir. 2003).

Vincent does not dispute that the evidence was sufficient to show that he agreed to and in fact did intentionally aid Dion in a criminal undertaking by assisting in counting the currency. However, Vincent claims that the evidence was not sufficient to create a reasonable inference that he knew the particular illegal purchase to which the currency was to be put, <u>i.e.</u>, that it was going to be used to purchase cocaine. We disagree.

Urias testified regarding Dion's discussions with him during the approximately two and a half hours that Dion, Urias, and Vincent spent counting the currency in the apartment. Urias

testified that Dion told Urias, in front of Vincent, that Vincent had not liked working in a restaurant and studying and that the only thing Vincent liked was "counting kilos and counting paquetes," which Urias explained referred to money packages and cocaine. J.A. 101. He testified that he also had discussions at that time with Dion about the cocaine that Urias was going to give Dion in exchange for the money as well as the fact that it would be Vincent who would be coming to the apartment to pick up future drug deliveries. Especially in light of those discussions, a jury could have reasonably concluded that Vincent was well aware of the purpose for which the currency was to be used.

### B.

Zenon also maintains that the evidence was insufficient to support his involvement in the charged crimes. We disagree.

Zenon was the lessee of the apartment where the initial meeting and the money counting took place, and he was found in the kitchen of the apartment hiding with Dion in the pantry while approximately $1.5 million dollars was stacked up on the floor of the living area, in plain view. Additionally, a jury could reasonably conclude that Zenon had been operating as a lookout for the morning meeting and that he had been preparing for the afternoon meeting when he arrived at the apartment

10

minutes before the informants and backed the truck out of the garage and parked it in a nearby parking space.

III.

For the foregoing reasons, Appellants' convictions are affirmed.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.[2]

AFFIRMED

---

[2] We have reviewed the additional arguments contained in the supplemental pro se brief.