**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Antonio Sival CAMPBELL,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Isaac GADSON, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Clarence Edward HAYNES,**
**Defendant–Appellant.**

**Nos. 90–5497, 90–5501 and 90–5506.**

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1991.

Decided June 5, 1991.

Jeffrey T. Twardy, Sr., Annandale, Va., for defendant-appellant Campbell.

Thomas J. Foltz, Alexandria, Va., for defendant-appellant Gadson.

Michael Joseph Cassidy, Fairfax, Va., for defendant-appellant Haynes.

Bernard J. Apperson, III, Asst. U.S. Atty., Alexandria, Va., argued (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.

BRITT, District Judge:

Defendants appeal their convictions and sentences on charges relating to the distribution of crack cocaine. For the reasons stated below, we affirm in all respects.

## I.

On 16 October 1989, Alexandria, Virginia police raided the home of Kena Parker and seized a safe which contained approximately 98 grams of crack cocaine, a .44 Magnum handgun, scales, and drug-packaging, cutting, and distribution paraphernalia. Also found was a handwritten "owe sheet" containing the names and beeper numbers for appellants Isaac Gadson and Clarence Haynes, and the amount of drug debts owed by appellants Gadson, Haynes, and Antonio Campbell to Ronald Best, to whom the safe belonged. Parker testified that the safe was stored in her house by Best. She testified that she had seen Haynes in that location with Best and had also seen Campbell there with Best, where Best was cutting and bagging crack and passing some to Campbell.

Best, the organizer and leader of the crack-distribution operation, pled guilty to the conspiracy count and testified against all three appellants who he identified as his crack workers. He testified that he met Haynes in July of 1989 and provided him with between $500 and $1,000 worth of crack which Haynes redistributed to twenty to thirty people. Thereafter, Haynes became a regular worker for Best and ob-

tained the same amount of crack for redistribution every other week on a regular basis from July until October. Best testified that Campbell also worked for him, and that when he met Campbell, he provided him with $500 worth of crack which Campbell redistributed to five to ten people under Best's supervision. Campbell received $500 worth of crack from Best the following month. Best testified that he had provided Gadson with one-half ounce of crack when they first met and that Gadson became a regular worker who received anywhere from one-half ounce to two ounces on an ongoing basis. He testified that in January of 1990 he provided Gadson with one-eighth of a kilogram of crack in Maryland. Best confirmed that the "owe sheet" which had been confiscated from the safe contained the names and beeper numbers for Gadson and Haynes and the amount of money all three appellants owed for fronted crack cocaine.

Otis Larry Brown, a co-conspirator, confirmed that Gadson and Haynes received distributable amounts of crack cocaine from Best on many occasions. Brown testified that Gadson had transported co-conspirators to and from the distribution site and had assisted Best in obtaining beepers for the co-conspirators. He testified that Haynes had purchased the handgun found in the safe for Best. He testified that on a single occasion Gadson had obtained one-fourth of a kilogram of crack from Best for $7,000 and asked Brown to sell half of that for him. Anthony Barnes, another co-conspirator, testified that Haynes had received crack from Best which he then sold to about a dozen people on one occasion. He testified that Gadson received one-half ounce to one ounce of crack on another occasion, and that Campbell once received a handful of "rocks" from Best.

Appellants were convicted following a two-day jury trial on counts of conspiracy to distribute fifty grams or more of crack cocaine, distribution and possession with the intent to distribute, and distribution within 1,000 feet of a school. Gadson and Haynes were each sentenced to 360 months imprisonment and Campbell was sentenced to 188 months imprisonment. This appeal followed.

## II.

### A.

■ Appellants assert seven assignments of error, five addressing their convictions and two concerning their sentences. Their first assignment of error challenges the sufficiency of the evidence to support their convictions. At argument, counsel for Gadson clarified appellants' position in this regard by arguing that the government cannot prove a case of possession or distribution of crack cocaine, or conspiracy to possess or distribute crack cocaine, unless someone sufficiently familiar with the properties of crack cocaine testifies that the very substance alleged to have been possessed or distributed was in fact crack cocaine. Because such testimony was absent in this case, appellants contend that their convictions cannot stand.

In advancing this argument, appellants rely heavily on the testimony of the government's forensic expert and on a tongue-in-cheek remark by the district judge. First, appellants highlight the expert's statement during cross-examination that a substance cannot be identified as crack cocaine merely by looking at it. Thus, appellants contend that the testimony of co-conspirators that they and appellants distributed crack cocaine was an insufficient foundation to establish that the substance involved was crack cocaine. Second, appellants argue that the district judge's comment, "Somebody was sure being fooled then if they thought—" indicates that he was deeply concerned over whether the substance charged in the indictment was in fact crack cocaine.

With respect to the judge's remark, appellants make much ado about nothing. The judge made that comment in the process of *denying* appellants' motion for judgment of acquittal following the government's case-in-chief. He expressed no hesitancy whatsoever in denying their motion which was based, in substantial part, on the argument appellants advance here.

With respect to the forensic chemist's admission, although the government's failure to adduce the type of testimony deemed essential by appellants may have affected the jury's view of the government's case, it by no means prevented the government from making its case. It was certainly reasonable for the jury to conclude from the testimony of several co-conspirators that all three appellants possessed and distributed crack cocaine, and were part of a conspiracy to do so. Moreover, the government's forensic expert did testify that the substance found in the safe around which this drug-distribution ring revolved was indeed crack cocaine.

Appellants would have us hold that absent 1) self-incriminating testimony from an "expert" dealer that he tested the substance and concluded it was crack cocaine, 2) self-incriminating testimony from an "expert" user that the substance he consumed was crack cocaine, or 3) a seizure of the substance prior to it being consumed or destroyed, a charge of crack possession or distribution cannot be proven. We fail to detect anything in 21 U.S.C. § 841 or the Constitution which requires this unduly rigorous method of proof. Construing the evidence in the light most favorable to the government as we must, *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982), we reject the argument that there was insufficient evidence to support appellants' convictions.

### B.

■ At trial, the government introduced Campbell's postarrest spontaneous statement that "just because I am staying at Kena's [Parker's] place doesn't mean I am dealing crack." In addition, and without objection, the government introduced Campbell's post-arrest statement that he "had only gotten crack cocaine from Ronald Best on three occasions and on each occasion it was only $550 worth of crack cocaine," and that he had "given it to friends." Gadson contends that these statements incriminated him because their incrimination of Campbell, Best, and Parker in conjunction with Best's testimony

about Gadson inevitably leads to the conclusion that Gadson was part of the conspiracy. Thus, Gadson contends, the principle of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), was violated.

■ *Bruton* stands for the proposition that an accused's sixth amendment right of confrontation is violated when a non-testifying co-defendant's statement which inculpates the accused is admitted into evidence at their joint trial. *Id.* at 127–28, 88 S.Ct. at 1623. The codefendant's statement is inculpatory if it could be fairly understood to incriminate the accused. *United States v. Crockett*, 813 F.2d 1310, 1315 (4th Cir.), *cert. denied*, 484 U.S. 834, 108 S.Ct. 112, 98 L.Ed.2d 71 (1987). Gadson contends that because Campbell's statement gave credence to Best's testimony implicating Gadson in the drug-distribution ring, the statement can be fairly understood to incriminate Gadson.

Gadson's argument misses the point of *Bruton*, which is to protect the accused's right of confrontation. Standing alone, Campbell's statement did not incriminate Gadson. If the statement did incriminate Gadson in the manner he contends, it is only because *Best* testified to Gadson's involvement in the conspiracy. Best did take the witness stand and was cross-examined by counsel for Gadson. Thus, Gadson's right of confrontation was not impaired by the introduction of Campbell's statement.

### C.

■ At the time of Gadson's post-arrest statement—three o'clock a.m., more than six hours after his arrest—he had been informed of his *Miranda* rights, waived them, and was locked in a room handcuffed to a chair with his interrogators. Gadson now contends that the circumstances surrounding the statement give rise to an inference of involuntariness. Gadson admits that his trial counsel did not file any motion to suppress the statement, but argues nevertheless that the trial court had an obligation to review the voluntariness of his statement *sua sponte* under *United States v. Powe*, 591 F.2d 833, 847 (D.C.Cir.

1978). This court has held, however, that the issue of voluntariness must be timely raised or it is thereafter waived. *United States v. Wilson*, 895 F.2d 168, 172–73 (4th Cir.1990). Since the voluntariness issue was never raised until appeal, it is not properly before the court.

### D.

■ Gadson next assigns as error the district court's admission under Federal Rule of Evidence 404(b) of co-conspirator Brown's testimony concerning Gadson's preconspiracy purchase of a truck. Brown testified that Gadson had used his blue Montero truck to transport Best to the distribution site and the site of the safe and crack storage as part of the conspiracy. He further testified that he had been present with Gadson in December of 1988 —prior to the conspiracy—when Gadson paid $5,000 in cash as a downpayment for the truck and that Gadson had put the truck in Gadson's sister's name "so the Feds couldn't take it." The court allowed the testimony over defendant's objection as to relevance.

At the outset, we fail to see how the evidence Gadson contends should have been excluded even falls within the ambit of Rule 404(b). That rule prevents the government from using a defendant's prior bad conduct to suggest his propensity to commit a crime. The testimony elicited by the government concerning the purchase of the truck in no way intimated prior bad conduct of Gadson or his propensity to distribute crack. The prior bad conduct which Brown did testify about—that Gadson obtained the $5,000 from selling drugs—was elicited by *Gadson's counsel* on cross-examination. Certainly it was not error for the district court to fail to exclude evidence elicited by Gadson's own counsel.

■ To the extent the government's evidence that Gadson had $5,000 in cash to purchase the truck and that he put the truck in his sister's name to prevent the "Feds" from taking it can be considered use of prior acts to show propensity to commit a crime, we have no hesitation in holding that the trial court did not abuse its discretion in admitting the evidence under Rule 404(b). Such evidence was relevant because the truck was used to facilitate the transportation of co-conspirators to and from the distribution and storage site during the conspiracy. The closeness of time between the purchase of the truck and the commencement of the conspiracy, and the fact that two co-conspirators—Brown and Gadson—were involved in the purchase of the truck, indicate the significance of this evidence in relation to the impending conspiracy. Moreover, admission of this evidence did not create a "genuine risk that the emotions of the jury [would] be excited to irrational behavior...." *United States v. Masters*, 622 F.2d 83, 87 (4th Cir.1980). Thus, Brown's testimony regarding purchase of the truck was properly admitted. *See United States v. Percy*, 765 F.2d 1199, 1203–04 (4th Cir.1985) (applying Rule 404(b) to preconspiracy drug sales).

### E.

■ On 16 March 1990, Haynes moved the district court to dismiss the indictment to the extent that it was based on 21 U.S.C. § 845a(a) (now 21 U.S.C. § 860(a))—the "school-zone" statute-arguing that the statute is unconstitutional on its face. Campbell and Gadson were permitted to join in the motion, and it was denied.

The statute at issue mandates a doubling of the punishment provided under other drug-distribution sections of the United States Code if the offense occurred within 1,000 feet of a "public or private elementary, vocational, or secondary school." 21 U.S.C. § 860(a). Appellants' position that this statute is unconstitutional is based primarily on *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), in which the Supreme Court invalidated a statute mandating the enhanced penalty of sterilization if an individual was determined to be a "habitual criminal." The *Skinner* court stated that it is discrimination to "lay an unequal hand on those who have committed intrinsically the same quality of offense...." *Id.* at 541, 62 S.Ct. at 1113. Appellants argue that an "unequal hand" is being applied to them because other drug

dealers operating outside the 1,000–foot statutory line may have an equal or greater effect on children and yet are subject to only half the punishment they received. Appellants also contend that the government, through this statute, has created an impermissible irrebuttable presumption that drug transactions occurring within this 1,000–foot area will impact on children.

Congress has seen fit to enhance the penalty for illicit narcotics activity in school zones regardless of whether any individual transaction occurring within a school zone actually affects children. We find that the enhanced penalty is rationally related to a legitimate government interest—keeping drugs away from the nation's schools. The statute therefore survives constitutional scrutiny. *Accord United States v. Thornton*, 901 F.2d 738, 740 (9th Cir.1990); *United States v. Holland*, 810 F.2d 1215, 1219 (D.C.Cir.), *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987); *United States v. Agilar*, 779 F.2d 123, 125 (2d Cir.1985), *cert. denied*, 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986). Moreover, the statute does not create an impermissible evidentiary presumption of guilt, *see Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), but rather evinces a permissible legislative determination of the appropriate punishment for those who engage in drug transactions near schools. *See Thornton*, 901 F.2d at 740; *Holland*, 810 F.2d at 1220–21; *Agilar*, 779 F.2d at 125–26.

■ Appellants also argue that the government's proof of violation of the school-zone statute was deficient because the deeds of the two schools involved were never tendered into evidence to establish the 1,000–foot radii of the real property comprising the schools. Notwithstanding the absence of such evidence, we find that the government did prove violation of the statute. It presented the testimony of the land-survey analyst for the City of Alexandria, Virginia, whose job it is to calculate and plot map locations for city engineering projects. He prepared government exhibit 18 which was an aerial photograph of the area in which the drug-distribution operations of Best and appellants occurred. He identified on the exhibit the Cora Kelly Elementary School and the St. Rita's Parochial School and drew lines calculated at 1,000 feet from the perimeters of the real property of the school buildings. The government also presented testimony from Joseph Rosboschil who has been a police officer with the City of Alexandria for seven years. He testified without objection, contradiction, or impeachment by cross-examination, that he was familiar with the Cora Kelly Elementary School and the St. Rita's Parochial School, both of which he identified on exhibit 18. He further identified and marked on the exhibit the locations of various distribution points where other witnesses had indicated distributions by appellants had occurred. As marked, exhibit 18 reveals that virtually all of the activity which took place as part of this crack-distribution conspiracy took place not only within one school zone, but in an overlapping area of the two school zones, and well within the 1,000–foot radius of both schools. Appellants were free to rebut this testimony with their own evidence establishing that the alleged distribution points are not within a school zone. This they failed to do.

Finally, Gadson adds as an assignment of error the trial court's failure to require the government to prove the official character of the buildings involved as school property through records of the City of Alexandria educational authorities or of the appropriate authority of the parochial school involved. They contend that the government's proof, offered only through a land surveyor, was constitutionally deficient. We find this argument to be completely without merit. The evidence was sufficient to be submitted to the jury.

### III.

### A.

■ Appellants Gadson and Campbell each challenge their sentence, though on different grounds. Gadson contends that the district court erred in determining his

base-offense level by calculating the weight of the crack attributable to him as that which flowed through the conspiracy and of which he was reasonably aware as opposed to the amount he personally distributed. The district court found that he was reasonably aware of 2,187 grams flowing through the conspiracy as opposed to the 656 grams which he personally distributed. We find adequate support for the district court's method of calculation in the application notes accompanying section 2D1.4 of the United States Sentencing Guidelines. Application Note 1 indicates that the Sentencing Commission determined that drug conspirators should be punished in a manner commensurate with the scale of the conspiracy, rather than their personal participation in the conspiracy.[1] Application Note 2 provides the district court with discretion in determining the scale of the conspiracy and approximating the quantity of controlled substances relevant to the conspiracy.[2] Upon careful review of the record, we find that the district court's factual determination in this regard was not clearly erroneous.

### B.

Campbell argues that the district court erred in failing to make a mitigatory role adjustment to his base-offense level. Section 3B1.2 of the Guidelines provides that a decrease in offense level should be granted to a defendant who plays an insubstantial role in a concerted criminal enterprise. Such a mitigating role may be "minor," in which case a decrease of two levels is granted, "minimal," in which case a decrease of four levels is granted, or something in between, in which a decrease of three levels is granted. At sentencing, the trial court adopted paragraph 28 of Campbell's presentence report ("PSR") which stated that he was "less culpable" than other defendants. However, paragraph 30 of the PSR stated that "while Mr. Campbell is rated as the least culpable of those named in this indictment, his conduct does not qualify him for a Mitigating Role Adjustment." Campbell contends that the district court's refusal to make a downward adjustment was error.

The defendant has the burden in seeking a reduction in his base-offense level. *United States v. Urrego–Linares*, 879 F.2d 1234, 1239 (4th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989). The district court's factual determination of a defendant's role in the offense will not be altered on appeal unless clearly erroneous. *United States v. Daughtrey*, 874 F.2d 213, 217–18 (4th Cir. 1989). "[M]itigating role adjustments apply only where ... a particular defendant is less culpable than other members of a group to such a degree that a distinction should be made at sentencing between him and other participants." *United States v. Gordon*, 895 F.2d 932, 935 (4th Cir.) (footnote omitted), *cert. denied*, — U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990). The background material accompanying section 3B1.2 provides that mitigating role adjustments are proper only for a defendant who is *"substantially* less culpable than the average participant." (Emphasis added.) Upon careful review of the record, we conclude that the district court was not clearly erroneous in its assessment of Campbell's role in the conspiracy. Moreover, it is worth noting that Campbell has received the benefit of a reduced role in the offense in that his base-offense level for the amount of crack which flowed through the conspiracy and of which he was reasonably aware was lower than that of his co-defendants. Campbell was assessed the offense level 34 whereas Haynes was assessed level 36 and Gadson was assessed level 38.

1. The note provides, in pertinent part: "If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of the substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale."

2. The note provides, in pertinent part: "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance."

## IV.

For the foregoing reasons, appellants' convictions and sentences are

AFFIRMED.