**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4439

GERBER NESTALIA VILLALOBOS, a/k/a
Herbert,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4634

HECTOR DAVID PORTILLO, a/k/a
Hector G. Chavez, a/k/a Julio A.
Gonzales, a/k/a Jose Chavez,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-95-227-A)

Submitted: December 31, 1996

Decided: January 28, 1997

Before WILLIAMS and MICHAEL, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael J. Cassidy, Fairfax, Virginia; Suzanne Little, Alexandria, Virginia, for Appellants. Helen F. Fahey, United States Attorney, James L. Trump, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Gerber Villalobos and Hector Portillo were convicted by a jury of one count of conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 (1994). They raise four issues on appeal. First, they argue that the evidence was insufficient to convict them of conspiracy. Second, they contend that the trial court erred by finding that they played more than a minor role in the offense. Third, Portillo claims that the trial court improperly determined the amount of drugs attributable to him. Finally, Villalobos and Portillo argue that the district court abused its discretion in admitting certain lease records. Finding no reversible error, we affirm.

From 1989-1993, Enrique Portillo ("Enrique") ran a cocaine distribution conspiracy. Enrique expanded his operation in 1991 when he met three Colombian suppliers ("the Colombians") operating out of Miami and New York. The evidence showed that Enrique made trips to New York or Miami every week to ten days to purchase cocaine from the Colombians.[1] Enrique always took someone with him on

_____

[1] The vast majority of the trips were to New York. The evidence also showed that Enrique Portillo normally purchased four to six kilograms of cocaine per trip.

2

these trips, and he frequently sent two people on the trips instead of going himself. Appellants went on several of these trips, where they either counted money or made the actual purchases. Enrique eventually was able to work out a credit arrangement with the Colombians. However, the Colombians always sent their own couriers either to deliver the drugs to Enrique in Northern Virginia or to follow Enrique's people as they drove from New York to Northern Virginia. At one point, Appellant Hector Portillo obtained a Virginia driver's license for one of the Colombians' couriers, using his (Hector Portillo's) address. Eventually, several members of the conspiracy were arrested, including the Colombians. Before the conspiracy unravelled, Enrique took delivery of over $100,000 worth of cocaine and fled the country.

On direct appeal of a criminal conviction, the "verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). We find the evidence more than sufficient to support Appellants' convictions.

Appellants' basic argument is that the Government's witnesses, who were mostly co-conspirators, were biased and unreliable. Appellants also contend that even if the testimony was sufficient to show that they were present during drug transactions, it was insufficient to show that they were part of a conspiracy.

Credibility determinations are solely within the jury's province and are not subject to appellate review. United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996); United States v. Lamarr, 75 F.3d 964, 973 (4th Cir. 1996). While the testimony of accomplices should be viewed with great care, even uncorroborated accomplice testimony may be sufficient to sustain a conviction. United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984), cert. denied , 469 U.S. 1217 (1985).

We find that the evidence was sufficient to convict Appellants of conspiracy. This court has held that once it has been proven that "a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support a conviction." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied,

3

505 U.S. 1228 (1992); see also Burgos, 94 F.3d at 862. This evidence can be circumstantial and may consist of the defendant's "relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy." United States v. Brown, 856 F.2d 710, 711 (4th Cir. 1988); United States v. Mabry, 953 F.2d 127, 130 (4th Cir.), cert. denied, 504 U.S. 914 (1992).

In the present case, the evidence established more than a "slight connection" between Appellants and the conspiracy. There is no dispute that Enrique was the leader of the conspiracy. There was ample testimony from the other co-conspirators to the effect that Appellants were frequently seen counting money and transporting the drugs and that Appellants were actively involved in numerous transactions. Finally, the evidence showed that Appellant Portillo helped one of the couriers obtain a Virginia driver's license. All of this conduct, taken together in a light most favorable to the Government, adequately supports Appellants' convictions.

Appellants further contend that the district court should have given them a mitigating role adjustment to their base offense level pursuant to USSG § 3B1.2.[2] Appellants base this contention on their belief that they were merely couriers who played a minor role in the conspiracy.

Appellants bear the burden of showing that they are entitled to a reduction in their base offense level. United States v. Campbell, 935 F.2d 39, 46 (4th Cir.), cert. denied, 502 U.S. 929 (1991). The district court's factual determination concerning Appellants' role in the offense will only be reversed if it was clearly erroneous. Campbell, 935 F.2d at 46.

Appellants failed to satisfy this burden. Appellants dealt directly with the suppliers and handled large amounts of cash and cocaine. While the district court found that Enrique and the Colombians were the most culpable, it also found that there were several others who were far less culpable than Appellants. Since "mitigating role adjustments are proper only for a defendant who is `substantially less culpa-

_____

[2] United States Sentencing Commission, Guidelines Manual (Nov. 1995).

4

ble than the average participant,'" the district court did not err by refusing to grant the adjustments. Campbell, 935 F.2d at 46.

The district court accepted the recommendation in the presentence report that Appellant Portillo was responsible for between fifteen and fifty kilograms of cocaine. Portillo argues that this finding is erroneous and that he should only be accountable for twelve kilograms of cocaine, which would reduce his base offense level.

The district court's factual determination concerning the amount of drugs attributable to Portillo will be upheld absent clear error. See Lamarr, 75 F.3d at 972. We find the evidence supports the district court's decision. Portillo bases his argument on his belief that the evidence only showed that he made four to five trips to New York to obtain a total of twelve kilograms of cocaine.[3] Even if Portillo's belief were correct, the district court's determination that he was accountable for more cocaine is supported by the record. As a member of the conspiracy, Portillo was accountable for all of the drugs reasonably foreseeable to him. United States v. Irvin, 2 F.3d 72, 78 (4th Cir. 1993), cert. denied, 510 U.S. 1125 (1994); United States v. Gilliam, 987 F.2d 1009, 1012-13 (4th Cir. 1993). Given the district court's finding that Portillo was aware of the scope of the conspiracy and that he obtained a driver's license for one of the couriers, we find it reasonable to attribute to Portillo the amount of cocaine delivered by the courier. The evidence showed that the courier made several trips to Northern Virginia to deliver cocaine and that on one occasion seven kilograms of cocaine were seized from the courier's vehicle by law enforcement officers. Given the average amount of cocaine purchased per trip, the district court's estimate that Portillo was responsible for fifteen to fifty kilograms of cocaine was not clearly erroneous.

After the close of its case-in-chief, the Government moved for the admission of lease records for the apartment shared by Appellant Portillo and members of his family, including Enrique. The Government argued that these records were important to show that the Portillos lived at that address, that the family moved out of the apartment at

_____

[3] Contrary to Portillo's argument, the district court found that he made more than four or five trips to New York and that the amount purchased averaged four to six kilograms per trip.

5

the same time Enrique stole the cocaine from the Colombians, and that a $55,000 cash bond allegedly raised by the family in 1991 must have come from illegal drug money. The district court admitted the lease records over defense objection.

A district court's evidentiary decisions are reviewed for abuse of discretion, and we find no such abuse. United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. 1993), cert. denied, 114 S. Ct. 1374 (1994). The district court conducted a proper Fed. R. Evid. 401/403 balancing test and concluded that the evidence was probative to the issues argued by the Government and that the prejudice to Appellant Portillo was minimal. Moreover, Portillo fails to show any prejudice from the admission of the lease records. Therefore, any error in admitting the evidence was harmless beyond a reasonable doubt. Arizona v. Fulminante, 499 U.S. 279 (1991).

We therefore affirm the findings and sentences of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED