**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                          No. 97-4997

LUIS FRANCISCO ALBA,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CR-97-95-S)

Submitted: September 15, 1998

Decided: October 6, 1998

Before NIEMEYER, HAMILTON, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jeff P. Manciagli, Atlanta, Georgia, for Appellant. Lynne A. Bat-
taglia, United States Attorney, Richard C. Kay, Assistant United
States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Luis Francisco Alba ("Alba") of conspiracy to possess with intent to distribute cocaine. On appeal, he alleges that the evidence was insufficient to support his conviction and that the district court erroneously found that he played more than a minimal role in the offense. Finding no error, we affirm.

In January 1997, Customs agents intercepted a shipment of metal cylinders from Venezuela. Approximately 1000 kilograms of cocaine was found hidden inside the cylinders. Shipping documents showed that the cylinders were bound for a warehouse in Baltimore, Maryland. Law enforcement officers conducted a controlled delivery of the cylinders and placed the warehouse under surveillance. One night, shortly after delivery, a group of people entered the warehouse to retrieve the cocaine.[1] The group became suspicious that police might be watching and fled, leaving the cylinders intact.

In mid-February 1997, Alba's nephew, Jose Orozco Alba ("Jose"), met with an undercover FBI agent posing as a truck driver. Jose told the agent that he needed help transporting the cocaine from Baltimore to New York, and they devised a plan to retrieve the cylinders. A few days later, Alba, his son, Oscar Alba ("Oscar"), Jose, and Jose's wife traveled from New York to Baltimore, in Alba's car, to observe the warehouse to see if it was under surveillance and to finalize the details for transporting the cocaine to New York. Also during this time, Alba introduced Jose and Oscar to the owner of a body shop in Brooklyn, New York, who would open the cylinders and remove the cocaine.

On February 26, 1997, Alba, Oscar, and Jose met the FBI agent at a rest stop on the New Jersey Turnpike to finalize the plans for getting the cylinders. During most of this meeting, Alba was in the restaurant. Jose told the agent that Alba was aware of what had to be done and could be trusted. Alba came out of the restaurant toward the end of

_____

[1] Alba was not identified as being part of this group.

2

the meeting and met the agent. The arrest signal was given, and the conspirators were arrested. Oscar and Jose eventually pled guilty to conspiracy charges pursuant to plea agreements and testified against Alba at his trial.

On direct appeal of a criminal conviction, a "verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). In the present case, we find that the evidence was sufficient to support Alba's convictions.

Alba alleges that he was not aware that the cylinders contained cocaine or that his son and nephew were conspiring to do anything illegal. While Alba now concedes that Oscar and Jose were involved in a conspiracy to distribute drugs, he claims that he did not know this at the time of the offense. Alba contends that he was merely dropping his son off at the rest stop on his way to visit a sick friend in Florida.

Credibility determinations are solely within the jury's province and are not subject to appellate review. See United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996), cert. denied , ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868); United States v. Lamarr, 75 F.3d 964, 973 (4th Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3309 (U.S. Oct. 21, 1996) (No. 95-9398). While the testimony of accomplices should be viewed with great care, even uncorroborated accomplice testimony is sufficient to sustain a conviction. See United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984).

We find that the evidence was sufficient to convict Alba of conspiracy. This court has held that once it has been proven that "a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support a conviction." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992); see also Burgos, 94 F.3d at 862. This evidence can be circumstantial and may consist of the defendant's "relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy." United States v. Brown, 856 F.2d 710, 711 (4th Cir. 1988).

Here, Alba's son and nephew were deeply involved in a conspiracy to transport cocaine from Baltimore to New York. Jose and Oscar tes-

3

tified that Alba traveled with them from New York to Baltimore after the aborted attempt to retrieve the cylinders to check out the warehouse to see if it was under surveillance and to plan how to get the cocaine to New York. He also introduced them to the owner of a body shop who would open the cylinders with a blow torch and remove the cocaine. Finally, the plan was for Alba to accompany the agent to the warehouse to get the cylinders. We find that all of this conduct, viewed in a light most favorable to the Government, and coupled with the strong family ties involved, adequately supports Alba's conviction.

Alba further contends that the district court should have given him a four-level mitigating role adjustment to his base offense level pursuant to USSG § 3B1.2.**2** Alba bases this assertion on his belief that he was far less culpable than Jose or Oscar. We disagree.

Alba bore the burden of showing that he was entitled to a reduction in his base offense level, and the district court's factual determination concerning his role in the offense will only be reversed if it was clearly erroneous. See United States v. Campbell , 935 F.2d 39, 46 (4th Cir. 1991). We find that Alba failed to satisfy this burden and that the evidence supports the district court's decision. While it appears that Jose and Oscar may have been more involved in the conspiracy than Alba, the record also suggests that Alba's involvement was more than minimal. As discussed above, Alba traveled to Baltimore to check out the warehouse, helped plan how the truck would pick up the cylinders, introduced Jose and Oscar to the owner of the body shop, and planned on traveling with the undercover FBI agent to Baltimore to retrieve the cylinders and bring them back to New York. Since "mitigating role adjustments are proper only for a defendant who is substantially less culpable than the average participant," the district court did not err by declining to grant the requested adjustment. See Campbell, 935 F.2d at 46.

We therefore affirm Alba's conviction and sentence. Alba's unopposed motion to submit the case on the briefs is granted. We dispense with oral argument because the facts and legal contentions are ade-

_____

**2** U.S. Sentencing Guidelines Manual (1997).

4

quately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED