**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 98-4291

FLOYD RAYMOND LOOKER, a/k/a
Ernest B. Ray, a/k/a Ray,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-96-40)

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 98-4292

FLOYD RAYMOND LOOKER, a/k/a
Ernest B. Ray, a/k/a Ray,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 98-4293

FLOYD RAYMOND LOOKER, a/k/a
Ernest B. Ray, a/k/a Ray,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 98-4294

FLOYD RAYMOND LOOKER, a/k/a
Ernest B. Ray, a/k/a Ray,
Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-96-41, CR-96-42, CR-96-42)

Submitted: December 1, 1998

Decided: December 31, 1998

Before MURNAGHAN and KING, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William C. Gallagher, CASSIDY, MYERS, COGAN, VOEGELIN &
TENNANT, LC, Wheeling, West Virginia, for Appellant. William D.
Wilmoth, United States Attorney, David E. Godwin, First Assistant
United States Attorney, Clarksburg, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

2

**OPINION**

PER CURIAM:

Floyd Raymond Looker was charged in four separate indictments for various offenses associated with his activities as a member of a militia group. After a jury convicted Looker of conspiracy to manufacture explosives (18 U.S.C. § 371 (1994)), he entered guilty pleas in the other cases against him and was convicted of two counts of transporting unregistered firearms (destructive devices) (26 U.S.C. § 5861(j) (1994)), conspiracy to provide material support to terrorists (18 U.S.C. § 371 (1994)), and providing material support to terrorists (18 U.S.C. § 2339A (1994)). On appeal, Looker challenges the district court's decisions ordering consecutive sentences; enhancing his base offense level by four levels for being an organizer or leader pursuant to USSG § 3B1.1(a);[1] enhancing his base offense level by four levels for possession of explosive materials pursuant to USSG § 2K1.3(b)(3); and enhancing his base offense level by six levels for possession of more than fifty firearms pursuant to USSG § 2K2.1(b)(1)(F). Looker has also filed a motion requesting permission to file a pro se supplemental brief alleging that the district court erred in denying a hearing on his pro se motions; allowing his prosecution under a vague statute; ordering excessive security at trial; denying his pro se motion to withdraw his guilty plea; allowing the prosecution to violate the plea agreement; allowing the presentence report "to go forward after it was substantially challenged on material fact;" and "allowing the prosecution to submit false and misleading statements throughout this entire judicial process." Finding no reversible error, we affirm.

Looker organized and served as the commander of the Mountaineer Militia in West Virginia. The record shows that, in his capacity as commander, Looker ordered the manufacture of 2000 improvised explosive devices. One thousand of these devices were eventually sold to an undercover FBI agent posing as a broker planning on reselling them to terrorist organizations.[2] Looker also organized a training

---

[1] U.S. Sentencing Guidelines Manual (1997).

[2] Looker received a commission on this sale and on others to the agent.

3

session in which he requested a codefendant ("Moore") to provide training in explosive devices to the militia.[3] During another training session, Looker and his second-in-command ("Richards")[4] met another codefendant to discuss the manufacture of C-4 plastic explosives and nitroglycerine. Looker ordered the manufacture of the explosives and stated that he had a way to distribute them. He also ordered Richards to obtain the necessary laboratory equipment. Looker and Richards later met with Moore to discuss and order the manufacture of detonators for the explosives.

In 1995, pursuant to Looker's orders, Richards traveled to Pennsylvania to meet with still another codefendant ("Coon"). During this meeting, Richards arranged the transfer of C-4 plastic explosives, TNT, an unregistered sawed-off shotgun, and explosives-related materials. These items were eventually "sold" to the undercover FBI agent pursuant to Looker's orders. Looker appointed Coon as the supply and ordnance officer for the militia, and Coon supplied additional materials and explosive devices, including grenades.

Finally, at a command and staff meeting, Looker led a discussion concerning the identification of "targets" which could be attacked in the event of armed confrontation between the militia and the federal government. One of Looker's county commanders ("Rogers"), who was also a fireman, stated that he had access to blueprints for the FBI's Criminal Justice Identification Section facility near Clarksburg. Rogers provided Looker and Richards with photographs of the blueprints for the FBI facility, and plans were made for the destruction of the facility. The photographs were ultimately sold to the undercover agent for $50,000 with the understanding that he could provide them to a terrorist organization with greater ability to make an assault on the facility.

As part of Looker's plea agreement, the parties agreed that the cases would be consolidated for sentencing. The district court determined that the Guidelines range for the offenses involving explosives

_____

[3] An explosive device was detonated during this training.
[4] Richards also served as the militia's intelligence and security officer. Unbeknownst to Looker, Richards was acting as a confidential informant for the FBI.

4

and destructive devices was 151 to 188 months. The court further concluded that the terrorism offenses were not addressed under the Guidelines, and, pursuant to 18 U.S.C. § 3553(b) (1994), determined that the appropriate sentence for these offenses would be twenty-eight months each, to be served consecutively, for a total of fifty-six months. The district court imposed a sentence of 120 months each on the two offenses involving the transportation of destructive devices, to be served concurrent with each other.[5] The court imposed a sentence of forty months on the offense involving conspiracy to manufacture explosives, to be served consecutively with the 120-month sentences. This resulted in a total sentence of 160 months on the three offenses covered by the Guidelines. Finally, the court ordered that the fifty-six month sentence for the terrorism offenses be served consecutively with the other sentences, for a total sentence of 216 months.

On appeal, Looker alleges that the district court should have ordered that the fifty-six month sentence be served at least partially concurrent with the other sentences so that his maximum exposure would only be 188 months. Because Looker did not object to the sentencing structure at trial, we review his current claim for plain error and find none. See generally United States v. Olano, 507 U.S. 725 (1993). Looker alleges that the "total punishment" referred to in USSG § 5G1.2(d) is 188 months in his case and that since his total sentence of 216 months exceeds this "total punishment" it is clearly erroneous. We disagree. The Guidelines range of 151 to 188 months applies only to the three offenses involving explosives and destructive devices, and the sentence imposed (160 months) falls within that range. The district court properly found that the terrorism offenses required a separate sentencing calculation because those offenses were not addressed in the Guidelines. We find Looker's reliance on United States v. Joetski, 952 F.2d 1090 (9th Cir. 1991), misplaced. The Joetski court remanded the case for resentencing because the trial court failed to expressly state that the sentences were to be served consecutively. There is no such infirmity here. The district court explicitly stated which sentences were concurrent and which were consecutive.

_____

**5** This was the statutory maximum for these offenses.

5

We review the district court's factual determination concerning Looker's role in the offense for clear error and find none. See United States v. Campbell, 935 F.2d 39, 46 (4th Cir. 1991). Looker organized the Mountaineer Militia and served as its commanding general. Even assuming, as Looker alleges, that some of the negotiations were performed by some of his staff officers, the record clearly shows that they were acting under the authority and pursuant to the orders of the commander. Moreover, there was ample evidence presented that Looker was directly involved in the offenses at issue and even received commissions from the sales to the undercover agent.

We reject Looker's assertion that the district court erred by enhancing his base offense level for possession of explosives with the knowledge, intent, or belief that they would be used in another felony offense.[6] Looker primarily argues that the Government failed to identify the specific felonies in question. However, this court has held that "§ 2K2.1(b)(5) does not require a defendant's knowledge of a specific offense to be committed." United States v. Cutler, 36 F.3d 406, 408 (4th Cir. 1994). Nevertheless, the record here shows that Looker possessed the materials in question believing that they would be used against the FBI facility in Clarksburg. We find that the district court properly concluded that the destruction of a federal building and the resulting potential for injury or death are separate felonies under the Guidelines.

The district court's enhancement of Looker's base offense level by six levels pursuant to USSG § 2K2.1(b)(1)(F) (providing for an enhancement if more than fifty firearms are involved) was based on the sale of the 1000 improvised explosive devices to the undercover agent. Looker alleges that because USSG § 2K2.1(b)(3) provides for an additional enhancement for offenses involving destructive devices, the improvised explosive devices could not be classified as both destructive devices and firearms. We disagree. Application Note 1 of the Guideline expressly states that the definition of the term "firearm" includes destructive devices. See USSG § 2K2.1, comment. (n.1).

We therefore affirm Looker's convictions and sentence. Looker's

_____

6 See USSG § 2K2.1(b)(5).

6

motion to file a pro se supplemental brief is granted.[7] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____
[7] We have considered the claims raised by Looker in his pro se supplemental brief and find that they are without merit.

7