UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 98-4838

ERROL ANTHONY LLOYD, a/k/a Teech,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CR-96-463)

Submitted: August 31, 1999

Decided: September 23, 1999

Before WILKINS and KING, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael W. Lieberman, Alexandria, Virginia, for Appellant. Helen F.
Fahey, United States Attorney, Gene Rossi, Special Assistant United
States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

A jury convicted Errol Anthony Lloyd of one count of conspiracy to possess with intent to distribute and to distribute over 1000 kilograms of marijuana in violation of 21 U.S.C. § 846 (1994). On appeal, Lloyd alleges that the district court erred by (1) denying his motion to suppress evidence seized during a search of his home; (2) denying his motion to suppress a personal address book seized from his person; (3) enhancing his base offense level for possession of a firearm pursuant to USSG § 2D1.1(b)(1);[1] and (4) imposing a three-level upward adjustment based on his role in the offense pursuant to USSG § 3B1.1(b).[2] Finding no reversible error, we affirm.

Lloyd was a member of a large drug conspiracy which distributed marijuana in California and the Washington, D.C., area ("D.C."). The record shows that conspirators in California would ship the marijuana to D.C. using couriers, Federal Express, or UPS. Conspirators in D.C. would pay for the drugs by transferring money back to California via Western Union. Lloyd and co-defendant Gerald Phillips were "lieutenants" in the D.C. operation, and they were responsible for receiving large shipments of marijuana, paying and directing the operations of the couriers, and preparing the marijuana for street-level distribution.

In his first motion to suppress, Lloyd alleged that the search warrant for his home was defective because there was insufficient probable cause to support it and that any possible supporting information was stale. The district court denied the motion, finding that the warrant was supported by probable cause and that, in the alternative, the officers executing the warrant acted in good faith. We review for clear error factual determinations made at a suppression hearing, while legal conclusions are reviewed de novo. See United States v. Han, 74 F.3d 537, 540 (4th Cir. 1996). In reviewing whether probable cause

_____

[1] **U.S. Sentencing Guidelines Manual** (1997).
[2] The court found that Lloyd was a manager or supervisor in the conspiracy.

existed for the issuance of the search warrant,"[g]reat deference is to be given a magistrate's assessment of the facts," and the "inquiry is directed to whether the magistrate had a substantial basis for his conclusion that probable cause existed." United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (citations omitted). This court has adopted a standard that "allows a magistrate to review the facts and circumstances as a whole and make a common sense determination of whether `there is a fair probability that the contraband or evidence of a crime will be found in a particular place.'" Id. (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).

We find that there was substantial evidence supporting the magistrate's decision to issue the search warrant for Lloyd's residence. A DEA agent, who submitted the affidavit in support of the warrant, stated that Lloyd was a suspect in a drug investigation; that, in the agent's experience, drug dealers tend to keeps records, documents, paraphernalia, and firearms in their homes where they are readily accessible; and that a vehicle used by Lloyd during drug transactions was kept at the residence. We find that the information supplied by the agent was sufficient to support the magistrate's conclusion that there was a "fair probability" that evidence of Lloyd's drug trafficking activities could be found at the residence. In addition, contrary to Lloyd's assertions, we find that the affidavit adequately sets forth the reliability of the sources providing information to law enforcement officers. Finally, because of the continuous nature of the drug conspiracy, we find that none of the information in the affidavit was stale. See United States v. Ortiz, 143 F.3d 728, 732-33 (2nd Cir. 1998).

Lloyd's second motion to suppress concerned an address book seized from his person approximately nine months prior to the search of his residence. FBI agents in plain clothes were attempting a controlled delivery of a Federal Express package containing marijuana when Lloyd drove by the apartment building and parked his car in a nearby alley. As Lloyd approached the apartment, the agents identified themselves and began asking Lloyd questions about who he was and why he was there.[3] Lloyd gave the agents contradictory and suspicious answers. At one point in the conversation, Lloyd pulled out an

_____

[3] When Lloyd gave his name, the lead agent recognized him as a suspect in the investigation.

3

address book and gave the agents telephone numbers in an attempt to verify his story. The lead agent recognized some of the names in the address book as being suspects in his investigation and asked Lloyd if he could have the book. Lloyd consented.**4**

We review the district court's finding that Lloyd's encounter with the FBI agents was consensual for clear error and find none. See United States v. Analla, 975 F.2d 119, 124 (4th Cir. 1992). The agents did not draw their weapons or place Lloyd under arrest, nor is there anything in the record to suggest that a reasonable person in Lloyd's position would have believed he could not terminate the encounter. Because the encounter was entirely consensual, there were no Fourth Amendment implications, and, therefore, no basis for suppressing the address book or its contents.

The Government need only prove by a preponderance of the evidence that the firearms enhancement is applicable, see United States v. Urrego-Linares, 879 F.2d 1234, 1237-38 (4th Cir. 1989), and the district court's factual determinations must be upheld unless they are clearly erroneous. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). In addition, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, app. n.3. In the present case, we find that the district court properly applied the enhancement. The firearm was discovered under the mattress in Lloyd's bedroom, and he presented no evidence suggesting that the weapon was kept for a legitimate purpose. In addition, agents observed numerous bullet holes in the outside walls of the home, and a co-defendant testified that Lloyd frequently carried a weapon similar to the one discovered in the bedroom. We find that this evidence certainly implies that the firearm was kept for self-defense in connection with Lloyd's drug activities.

Finally, we find no clear error in the district court's factual determination concerning Lloyd's role in the offense. See United States v. Campbell, 935 F.2d 39, 46 (4th Cir. 1991). Phillips testified that he and Lloyd were partners. In addition, there was substantial evidence that Phillips and Lloyd, both individually and collectively, ran their

_____

**4** Lloyd was not arrested as a result of this encounter.

4

own "stash house;" received large shipments of marijuana; picked up, paid, directed, and escorted couriers; and prepared the marijuana for distribution.

Accordingly, we affirm Lloyd's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>