**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 99-4678

JESUS AYALA, JR.,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 99-4679

JAVIER AYALA,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 99-4680

MARICELLA AYALA,
Defendant-Appellant.

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CR-98-1234)

Submitted: March 31, 2000

Decided: April 21, 2000

Before WILKINS, WILLIAMS, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

A. Peter Shahid, Jr., SHAHID LAW OFFICE, L.L.C., Charleston, South Carolina; Donald H. Howe, HOWE & WYNDHAM, L.L.C., Charleston, South Carolina; Kenneth C. Krawcheck, KRAWCHECK & DAVIDSON, L.L.C., for Appellants. J. Rene Josey, United States Attorney, Matthew R. Hubbell, Assistant United States Attorney, Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Pursuant to their guilty pleas, Jesus Ayala, Jr. ("Jesus"), Javier Ayala ("Javier"), and Maricella Ayala ("Maricella") were convicted of conspiracy to knowingly possess forged or counterfeited alien registration cards. On appeal, all three Appellants challenge the district court's decision to enhance their base offense levels for their roles in the offense.[1] Appellants also allege that the district court should have reduced their base offense levels by three levels because the offense was committed other than for profit.[2] Finding no reversible error, we affirm.

_____

[1] **See U.S. Sentencing Guidelines Manual** § 3B1.1 (1998). Jesus and Javier each received a four-level enhancement as organizers or leaders under subsection (a). Maricella received a three-level enhancement as a manager or supervisor under subsection (b).

5130    35   5   [2] **See** USSG § 2L2.1(b)(1).

2

The basic facts of this case are undisputed. Appellants are siblings who own and operate a series of Mexican restaurants in the Charleston, South Carolina, area. After a lengthy investigation, INS and Customs Service agents raided several restaurants, including the seven owned by Appellants. Seventy illegal aliens were found working in Appellants' restaurants.**3** Forged and counterfeited registration documents were also seized. The record shows that a manager at one of Appellants' restaurants ("Lumbardo") supplied the aliens with fake "green cards."

We review the district court's factual determination concerning Appellants' roles in the offense for clear error and find none. See United States v. Campbell, 935 F.2d 39, 46 (4th Cir. 1991). Appellants contend that the district court erroneously focused on their managerial roles in the legitimate aspects of their restaurant business rather than the narrow offense of conviction. We disagree. The court was clearly allowed to look at all relevant conduct in fashioning its sentences.**4** Moreover, the district court correctly concluded that the object of the conspiracy was not merely to possess fake alien registration documents. Rather, the primary focus of the conspiracy was to bring illegal aliens into the United States from Mexico, where they would work long hours for low pay in Appellants' restaurants, thereby greatly increasing the restaurants' profits.

We find that there was substantial evidence to support the district court's conclusion that Appellants played significant roles in bringing illegal aliens into the United States and using them to work in their restaurants. Three restaurant managers, including Lumbardo, agreed to cooperate with investigators. Other workers and a confidential informant hired by Appellants also agreed to cooperate.

The evidence showed that Jesus and Javier controlled most of the operation. One of the managers told agents that Jesus told him that it was the managers' responsibility to obtain fake green cards for their employees. Another manager stated that Jesus told him to go to Sears

---

**3** In fact, nearly all of the employees at Appellants' restaurants were illegal aliens.

**4** See USSG § 1B1.3.

3

to get photographs taken of the workers and to send the photos to Lumbardo for use in the fake green cards. The cost of the false documents would then be taken out of the workers' pay. Jesus leased apartments for the workers, and on one occasion told Javier to change workers' living arrangements because they were too expensive. Jesus closely monitored the workers' pay, and either he or one of the other managers would sign the workers' payroll checks and redeposit them into the restaurants' bank accounts, paying the workers in cash -- usually for less than the amount of the payroll checks. Witnesses further stated that Jesus frequently paid the smuggling fee for workers and then had them reimburse him from their pay. Finally, Jesus controlled the money for the organization and reaped a large share of the profits.

Javier also played a significant role. One of the managers stated that Javier and Jesus were equals in the organization. Javier hired a confidential informant who clearly stated that he was an illegal alien. Javier told the informant that fake papers were acceptable and that the informant could get a fake green card from Lumbardo. Javier also leased rooms for workers and paid smuggling fees. Finally, Javier and Jesus were the only ones with access to the safe where the restaurants' profits were kept, and he also reaped a larger share of those profits.

The district court properly found that Maricella played a large role in the conspiracy, but that she was subservient to her brothers. The Government produced a tape recorded conversation between Maricella and a Border Patrol agent[5] in which she bragged about employing a lot of illegal aliens in the family's restaurants. She also stated that she recently paid $5000 to bring aliens into the United States illegally and to obtain documents. One of the managers testified that she hired him knowing that he was an illegal alien, but had to get Jesus' permission first. Finally, the record shows that Maricella helped workers obtain driver's licenses from a corrupt official at the Department of Motor Vehicles.

We likewise find no clear error in the district court's refusal to reduce Appellants' base offense level under USSG§ 2L2.1(b)(1).

_____

[5] At the time, Maricella and the agent were involved in a romantic relationship.

4

Appellants bore the burden of showing that they were entitled to the adjustment, and they failed to meet this burden. See United States v. Urrego-Linares, 879 F.2d 1234, 1239 (4th Cir. 1989). Although Appellants were not paid directly for the fake green cards, the record shows that the cost of the cards was taken from the workers' pay. More importantly, Appellants realized significant profits by employing illegal aliens who would work long hours for low pay.[6]

Accordingly, we affirm Appellants' sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court, and argument would not aid the decisional process.

AFFIRMED

_____

[6] Appellants further employed the aliens in violation of wage and hour and tax laws.

5